Lawrence **CUSHING**; Regina **Belser**; Alan **Howard**; Susan **Allegra**; Geri **Randolph**; Jane **Doe**; Marietta **Lugo**; Joseph **Krzemenski**; Robert **Gamari**, individually and on behalf of all those similarly situated, Plaintiffs–Appellants,

v.

Frank **MOORE**; William H. Benton; Essie Mariah M. Carstarphen, and as Directors, and or Supervisors of Whitney M. Young Jr. Health Center, Inc.; doing business as Whitney M. Young Jr. Rehabilitation Clinic; Whitney M. Young Jr. Health Center, Inc., doing business as Whitney M. Young Jr. Rehabilitation Clinic, Defendants–Appellees.

**No. 1568, Docket 92–7194.**

United States Court of Appeals,
Second Circuit.

Argued May 21, 1992.

Decided July 27, 1992.

Arthur J. Siegel, Albany, N.Y. (Bond Schoeneck & King, Hermes Fernandez, of counsel), for plaintiffs-appellants.

Daniel J. Stewart, Albany, N.Y. (Dreyer, Boyajian & Tuttle, of counsel), for defendants-appellees.

Before: PRATT and ALTIMARI, Circuit Judges, and KELLEHER, District Judge, for the Central District of California, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Plaintiffs appeal from a judgment of the United States District Court for the Northern District of New York, Neal P. McCurn, *Chief Judge*, that dismissed their claims for lack of subject-matter jurisdiction.

Plaintiffs are outpatients at the Whitney M. Young, Jr. Health Center, Inc. Rehabilitation Clinic, where they had been receiving "take-home" methadone treatment under a program that exempted them from daily visits to the clinic to receive their medication. When the clinic terminated their take-home treatment privileges, they brought this suit and immediately moved for a preliminary injunction, claiming federal-question jurisdiction on the ground that the clinic's conduct violated (a) the rehabili-

tation act of 1974 and (b) the relevant Food and Drug Administration (FDA) regulations which, plaintiffs claim, create a private right of action. Claiming diversity jurisdiction, they also advanced several state law claims. In the course of reviewing the injunction motion, the district court concluded that it lacked federal jurisdiction and therefore dismissed both the state and federal claims. *Cushing v. Moore,* 783 F.Supp. 727, 739 (N.D.N.Y.1992).

## BACKGROUND

In August 1991 the clinic was faced with two serious incidents that threatened to compromise its take-home methadone program. First, the FDA cited the clinic's take-home program for various deficiencies. Shortly thereafter, police arrested four patients of the clinic, some of whom were charged with possession and/or sale of methadone. *See Cushing,* 783 F.Supp. at 729-31. In response, the clinic developed a new take-home treatment policy, the implementation of which caused several plaintiffs to lose their take-home treatment privileges. By this action plaintiffs seek both reinstatement of their take-home privileges and damages for the clinic's having suspended those privileges.

The program itself is authorized by federal and New York State methadone regulations. Because methadone is a narcotic whose effects are milder than those of other narcotics, it is often used to treat heroin addiction and other forms of drug dependency. By administering methadone the clinic first removes the patient's primary addiction; then the clinic maintains the substituted dependency on methadone so as to permit the patient to function productively in society; finally, the clinic seeks to cure the methadone addiction and thus enable the patient to lead a drug-free life. *See* 21 C.F.R. § 291.501; *see also Cushing,* 783 F.Supp. at 729. In federally-regulated methadone programs, the drug is administered in oral form only. *See* 21 C.F.R. § 291.505(d)(6)(iii).

The regulations require that heroin-addicted patients, at the beginning of their treatment, receive medication at the clinic on a daily basis—initially, six days each week, with the clinic providing dosage to be taken home for the seventh day. Based on the patient's progress, the regulations permit the clinic to reduce the number of days on which the patient must appear in person to receive medication. When a patient has progressed sufficiently, he or she need appear at the clinic only once each week for a refill and examination.

State and federal regulations condition the receipt of take-home treatment on whether, among other things, the patient has spent a certain amount of time in the program and has made "[p]rogress in maintaining a stable lifestyle", N.Y.Comp.Codes R. & Regs. tit. 14, § 1040.11(a)(3) (1984), which includes "employment, school attendance or other appropriate activity." *Id.,* § 1040.11(a)(3)(v). We have previously determined that the particular state regulation that imposes an employment requirement for the provision of all take-home treatment is not preempted by the less stringent federal regulation, which imposes an employment requirement only where a patient is permitted to take home a six-day supply of methadone. *See Luna v. Harris,* 888 F.2d 949, 954 (2d Cir.1989).

After receiving the FDA's criticism and experiencing significant consternation over the arrest of some of its patients, the clinic adopted a new policy for take-home treatment that included an employment requirement as one factor in its determination of whether a patient was eligible for the take-home program. The relevant provision addresses

[w]hether the patient's employment status, lifestyle and living arrangements are secure enough to assure that the take-home medication will be taken by the patient and not diverted for illicit use.

Under the new policy, five of the named plaintiffs—Regina Belser, Alan Howard, Susan Allegra, Joseph Krzemenski and Robert Gamari—were terminated solely because they were unemployed. *See Cushing,* 783 F.Supp. at 731. The gravamen of their claim under the rehabilitation act is that because the clinic terminated their take-home methadone treatment based on

their unemployment, and because their unemployment was, in turn, a result of their handicap, the clinic's decision to terminate their take-home medication was based "solely" on their handicap in violation of the act.

Plaintiffs moved for a preliminary injunction ordering the clinic to restore their take-home medication. From the beginning, Chief Judge McCurn expressed concern about his jurisdiction and, although he proceeded with the motion for preliminary injunction, he also invited briefs from counsel on the question of whether or not federal jurisdiction existed for this case. Ultimately he concluded that he had no jurisdiction, and he dismissed the complaint without ruling on the injunction motion. As discussed below, we think the district court was almost, but not quite, correct.

### DISCUSSION

When a court determines that no jurisdiction exists, "the test is whether the complaint on its face, without resort to extraneous matter, is so plainly insubstantial as to be devoid of any merits and thus not presenting any issue worthy of adjudication." *Giulini v. Blessing*, 654 F.2d 189, 192 (2d Cir.1981); *see also Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir.1990). We therefore must carefully review the complaint in this case.

#### A. The Complaint.

The complaint set forth 19 claims advanced on behalf of nine named plaintiffs; it also sought class-action status on behalf of "all those similarly situated". For jurisdictional purposes, the claims can be divided into three groups.

#### 1. *State-law Claims.*

██ Fourteen of the nineteen claims are based on state law and therefore could be entertained either under diversity-of-citizenship jurisdiction, *see* 28 U.S.C. § 1332, or under the court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Federal diversity jurisdiction was sought based on the allegations that plaintiffs Cushing and Randolph were citizens of Vermont and

that plaintiff Howard was a citizen of Massachusetts. The district court properly rejected this basis for jurisdiction, because 28 U.S.C. § 1332 requires complete diversity between all plaintiffs and all defendants, and as appears from paragraph 7 of the complaint, plaintiffs Allegra, Belser, Lugo, Krzemenski, and Gamari all are citizens of New York, as are the defendants. *See Cushing*, 783 F.Supp. at 732–33.

Supplemental jurisdiction could be exercised only if some other, related claim provides a proper basis for federal jurisdiction. The district court may in its discretion decline to exercise its supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction". 28 U.S.C. § 1367(c). We return to this problem at the end of this opinion.

#### 2. *Federal–Regulation Claims.*

██ Four of the claims are based on alleged violations of federal regulations that govern the defendants' methadone clinic. The district judge dismissed these claims, because he found that congress had established no federal private cause of action, either expressly or by implication, for violation of the methadone regulations. We adopt Chief Judge McCurn's careful analysis of this issue as set forth in his opinion, *see Cushing*, 783 F.Supp. at 735–39, and therefore affirm his dismissal of those claims that were based on alleged violations of federal regulations.

#### 3. *Federal Rehabilitation Act Claims.*

The only other claim raising a plausible basis for federal jurisdiction is the third claim for relief, which was asserted on behalf of plaintiffs Belser, Howard, Allegra, Krzemenski, and Gamari. The allegations underlying that claim are meager. The claim itself is set forth in two paragraphs, the first of which, paragraph 82, incorporates the prior allegations of the complaint. The second, paragraph 83, contains what for our purposes are the operative allegations. It reads as follows:

83. Defendants' decision to terminate take-home medication for persons with

handicaps is contrary to and in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 706, 794.

Three other paragraphs arguably bear on this claim as well:

7. Plaintiffs Susan Allegra, Regina Belser, Marieta Lugo, Joseph Krzemenski and Robert Gamari are citizens and residents of the State of New York and are all handicapped individuals as defined under the Rehabilitation Act 29 U.S.C. [§§] 706, 794.

\*    \*    \*    \*    \*    \*

46. [Defendants' take-home policy] also fails to make any reasonable accommodation for those plaintiffs with handicaps and disabilities, or to recognize the hardship that daily attendance may impose upon them, regardless of whether said plaintiffs are "ambulatory."

47. The applicable federal regulations specifically excuse from employment requirements those plaintiffs unemployable by reason of their disability, and recognize physical disability as a basis for take-home medication. *See* 21 C.F.R. [§] 291.505(d)(v)(A)(3), (vi)(A).

One section of the complaint incorporated into plaintiffs' rehabilitation act claim is headed *"Defendants' Unlawful Actions"* and consists of paragraphs 60 through 72 inclusive. However, none of those "unlawful actions" makes any direct reference to any conduct directed against plaintiffs because they are handicapped.

Nowhere does the complaint allege whether plaintiffs are handicapped because of their opiate addiction, or because of some other handicapping condition, and as we shall see, this distinction carries considerable significance in the context of this rehabilitation act claim.

## B. The Rehabilitation Act.

■ Section 504 of the rehabilitation act, under which plaintiffs bring their claim, provides in relevant part that

No otherwise qualified individual with handicaps in the United States \* \* \* shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance \* \* \*.

29 U.S.C. § 794(a).

To succeed under § 504 plaintiffs must satisfy four elements: (1) that the clinic is a program or activity receiving financial assistance from the federal government; (2) that plaintiffs are "handicapped" within the act's definition of that word; (3) that the clinic terminated them from the privilege of receiving take-home medication solely by reason of their handicap; and (4) that they are "otherwise qualified" for the privilege. *See Doe v. New York University*, 666 F.2d 761, 774–75 (2d Cir.1981).

There is no dispute that defendant clinic is a federally-financed program, so the first element is satisfied. As to the second element, the district court avoided deciding whether plaintiffs qualified as "handicapped" within the meaning of the statute, because it concluded that such a question "presents a factual dispute, the resolution of which is unnecessary to the present inquiry into jurisdiction", *Cushing*, 783 F.Supp. at 734 n. 10, and it never reached the fourth element: "otherwise qualified".

What forced the district court to its ultimate conclusion that there was no jurisdiction under the rehabilitation act was plaintiffs' failure to satisfy the third element— that the clinic had terminated plaintiffs from the take-home privileges "solely" by reason of their handicap. Because plaintiffs had alleged in papers submitted on the injunction motion that the clinic had stopped their take-home privileges "because plaintiffs were unemployed", *Cushing*, 783 F.Supp. at 735, the district court concluded that the clinic did not base its decision "solely" on a disability and, therefore, could not have violated the statute.

On a verbal level, the district court's approach has considerable appeal. Unfortunately, our decision in *Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511 (2d Cir.1991), *petition for cert. filed*, 60 U.S.L.W. 3701 (U.S. March 26, 1992) (No. 91–1570), which was decided only shortly before the district court's decision, and

which apparently was not brought to the district court's attention by counsel, requires a deeper analysis.

### 1. *Applicability of Teahan.*

In *Teahan*, Metro–North fired an employee; its stated reason was excessive absenteeism. *Id.* at 514. Teahan, however, was an alcoholic and, therefore, was "handicapped" for purposes of the rehabilitation act. He claimed that his alcohol addiction had caused the absenteeism for which Metro–North had fired him, and that his discharge was therefore based "solely" on his handicap.

The district court granted summary judgment against him, concluding that because Metro–North had articulated a nondiscriminatory reason (absenteeism) for firing Teahan, it could not have acted "solely" by reason of Teahan's handicap (alcoholism). We reversed, concluding that the district court had improperly placed on Teahan the burden of demonstrating that Metro–North's reliance on the absenteeism was pretextual.

In so holding, we treated Teahan's rehabilitation act claim as one where the employer, by relying on a reason causally related to a handicap, "acknowledges that in taking adverse action against an employee it relied on plaintiff's handicap". *Id.* at 514–15. We noted that while an employer may use conduct of the employee that resulted from a handicap to determine the fourth element of a rehabilitation act claim—whether an employee is "otherwise qualified" for the job—that conduct is irrelevant to the third element—"whether he was terminated in the first place 'solely by reason of' his handicap." *Id.* at 515–16.

*Teahan's* central premise, then, is that an employer who "justifies termination based on conduct caused by [an employee's] handicap" is in essence relying on that handicap for purposes of the rehabilitation act. *Id.* at 516. As a result, the key determination becomes the factual issue of whether an employee's conduct (such as absenteeism), which forms the articulated basis for a job termination, is actually caused by a handicap (such as substance abuse). *Id.* at 517.

Plaintiffs argue that *Teahan* applies here because in revoking their take-home privileges the clinic relied on conduct (unemployment) that plaintiffs claim was caused by their handicap. Our problem on appeal stems from the fact that plaintiffs have not clearly identified just what is their "handicap". Defendants claim that it is their drug addiction, and this is the view of the complaint that the district court adopted. Plaintiffs, on the other hand, assert that their handicap is something else.

### a. *If the Handicap is Drug Addiction.*

Substance abuse is recognized as a handicap under the rehabilitation act, *see Teahan*, 951 F.2d at 517, and the act specifically recognizes as handicapped those drug-addicted individuals who are "participating in a supervised rehabilitation program and [are] no longer engaging [in the illegal use of drugs]". 29 U.S.C. § 706(8)(C)(ii)(II). From this language, it is clear that congress intended that individuals seeking to overcome their addiction would be able to obtain the benefits of the rehabilitation act when seeking access to services, benefits, and employment provided by a federally-funded program. *See generally Teahan*, 951 F.2d at 518. Even assuming, however, that plaintiffs were unemployed solely because of their handicapping addiction, they still could not succeed because, for several reasons, the fourth element of their claim, that they be "otherwise qualified" to receive the benefits of a federally-funded program, cannot be meaningfully applied where the drug addiction is directly related to the methadone program at issue.

First, the "otherwise qualified" language is simply inapplicable to the present context. It is difficult to envision a drug addict receiving methadone treatment in spite of his drug addiction, because it is his drug addiction that brings him to participate in the methadone program in the first place. Thus, "[i]f congress intended section 504 to apply in this manner, it chose strange language indeed." *United States*

*v. University Hospital,* 729 F.2d 144, 156 (2d Cir.1984).

Second, as we have observed in the past, we must be careful in applying § 504's "otherwise qualified" language to programs where a patient's handicap gives rise to the need for the services in question. In *University Hospital,* we observed that in "the mainstream of cases under section 504", where "the phrase 'otherwise qualified' is geared toward relatively static programs or activities such as education, * * * employment, * * * and transportation systems", *id.* (citations omitted), consideration of the nature of an individual's handicap will be largely irrelevant to the provision of those services. This is consonant with our statement in *Doe v. New York University,* 666 F.2d at 775, that the rehabilitation act's requirement that a plaintiff be "otherwise qualified" refers

> to a person who is qualified *in spite of* her handicap and that an institution is not required to disregard the disabilities of a handicapped applicant, provided the handicap is relevant to reasonable qualifications for acceptance, or to make substantial modifications in its reasonable standards or program to accommodate handicapped individuals but may take an applicant's handicap into consideration, along with all other relevant factors, in determining whether she is qualified for [the benefit at issue].

(emphasis in original).

As we noted in *University Hospital,* 729 F.2d at 156, *Doe* established that "section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question." As a corollary, therefore, § 504 must allow a federally-funded program, such as the clinic here, the ability to consider a patient's handicap where that handicap "gives rise to, or at least contributes to, the need for services." *Id.*

In order to effectively conduct a program for these plaintiffs, the clinic must consider plaintiffs' drug addiction, because that is the very object of their treatment. The continued success of the clinic's patients requires careful monitoring of each of them. But the program's administrators are also concerned with the possibility of methadone being illegally diverted into the community. Consequently, the clinic imposed the employment requirement to be satisfied that a patient's situation is, in the clinic's words, "secure enough to assure that the take-home medication will be taken by the patient and not diverted for illicit use." In short, with a patient who is unemployed because of drug addiction, the clinic would be justified in requiring the more intensive treatment of daily visits to the clinic.

We therefore conclude that if what plaintiffs are claiming is that the clinic terminated their take-home treatment on the basis of unemployment caused by their drug addiction, then they cannot succeed, because the rehabilitation act does not create a cause of action based on a handicap that is directly related to providing the very services at issue.

#### b. *If the Handicap is Other Than Drug Addiction.*

■ A different problem arises, however, if the patient's unemployment is caused by a handicap other than drug addiction. For example, a clinic patient might be paralyzed and, as a result, unable to work. In such a case, if the clinic were to revoke take-home privileges based on the unemployment, it would, under *Teahan,* be basing its decision solely on a handicap, and since that handicap is unrelated to the patient's drug addiction, the clinic would be violating § 504. *Cf. University Hospital,* 729 F.2d at 156 ("section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question").

#### 2. *Section 504 Claims of These Plaintiffs.*

As we demonstrated above, there can be no rehabilitation act claim if the handicap that caused each plaintiffs' unemployment was drug addiction, but plaintiffs may have a cause of action if their unemployment

was caused by a handicap other than drug addiction. In attempting to apply this principle to this record, however, we run afoul of plaintiffs' ambiguous pleading.

The district court dismissed the action based on its apparent assumption that each plaintiff's handicap was drug addiction; it did not consider the possibility that a plaintiff might be unemployed due to a handicap unrelated to the drug addiction.

Five of the plaintiffs allege that they are "handicapped", but they have failed in their complaint to specify in what way. One or more of these five "handicapped" plaintiffs might have a claim under the rehabilitation act, provided they can allege that they have a handicap other than substance abuse, that this handicap caused their unemployment, and that the clinic revoked their take-home treatment privileges solely because they were unemployed. Such a showing would allege a rehabilitation act claim sufficient to support federal jurisdiction.

■ Our next question is: Should we now require the district court to pursue that tiny federal jurisdictional "gem" in the context of this prolix, multi-claim, class-action complaint, whose more obvious claims to federal jurisdiction were correctly dismissed by the district court? We think efficient judicial administration requires a different approach. We therefore vacate the judgment of the district court that dismissed this complaint outright, and remand to the district court with a direction to enter a new judgment stating that the dismissal is without prejudice to repleading a federal rehabilitation act claim by one or more of plaintiffs Belser, Howard, Allegra, Krzemenski, and Gamari, provided that the claim is based on a handicap other than their drug addiction. *See, e.g., Frasier v. General Electric Co.*, 930 F.2d 1004, 1008–09 (2d Cir.1991) (vacating district court judgment and directing entry of new judgment of dismissal without prejudice to filing of amended complaint).

C. Supplemental Jurisdiction.

■ We have not addressed the state claims that plaintiffs seek to bring before the district court under its supplemental jurisdiction, *see* 28 U.S.C. § 1367, nor should we do so in the first instance. A new addition to the federal statutes applicable to civil cases filed after December 1, 1990, "supplemental jurisdiction" was intended to codify and to expand juridically-developed concepts of pendent and ancillary jurisdiction. Since the district court may exercise considerable discretion over what state claims it will include within its supplemental jurisdiction in a particular case, *see* 28 U.S.C. § 1367(c)(1)–(4), we leave it for the district court to determine what state claims, if any are alleged, may properly be considered under supplemental jurisdiction principles in conjunction with any valid federal claims that may be asserted by the five plaintiffs, should one or more of them elect to replead.

Affirmed in part; remanded in part.