148 F.3d 73
 13 NDLR P 28
 John DOE, Plaintiff-Appellant,
v.
Paul PFROMMER, individually and in his official capacity as
Director of the Rochester Office of Vocational Educational
Services for Individuals with Disabilities (VESID) and
Lawrence Gloeckler, individually and in his official
capacity as Deputy Commissioner of New York State VESID
Office, Defendants-Appellees.
 Docket No. 97-7614.
 United States Court of Appeals,
Second Circuit.
 Argued March 24, 1998.
Decided June 10, 1998.
 
 1
 Joseph M. Connors, Disabilities Law Clinic of Albany Law School, Albany, NY, for Plaintiff-Appellant.
 
 
 2
 Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General and Victor Paladino, Assistant Attorney General, for Dennis Vacco, Attorney General of the State of New York, Albany, NY, for Defendants-Appellees.
 
 
 3
 Before: FEINBERG, CALABRESI, Circuit Judges, SEYBERT, District Judge.*
 
 SEYBERT, District Judge:
 
 4
 Plaintiff-appellant John Doe brings this appeal of the district court's grant of summary judgment in favor of defendants-appellees Paul Pfrommer, individually and in his official capacity as Director of the Rochester Office of Vocational Educational Services for Individuals with Disabilities ("VESID"), and Lawrence Gloeckler, individually and in his official capacity as Deputy Commissioner of the New York State VESID office. Doe brought this action pursuant to 42 U.S.C. § 1983 claiming that the defendants denied him certain rehabilitative services under Title I of the Rehabilitation Act of 1973 ("Title I"), 29 U.S.C. § 720-753a, and that he was discriminated against on the basis of his disability in violation of both § 504 of the Rehabilitation Act, 29 U.S.C. § 794 and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101-12213.
 
 
 5
 Upon careful consideration of the briefs and arguments raised in this appeal, we reverse in part and affirm in part the district court's decision and remand the action as specified in this opinion.
 
 FACTUAL BACKGROUND
 
 6
 Plaintiff-appellant John Doe suffers from personality disorder and dysthymia and seeks to obtain employment as a writer/editor or word processor either on the job or at an in-home position. He holds a graduate degree in technical journalism. Prior to 1990, Doe was only able to obtain intermittent employment because his mental impairments limited his ability to accept authority, appear on time for work and otherwise perform in a manner such that he could prepare for or retain employment.
 
 
 7
 In August 1990, the Rochester office of VESID began to provide Doe with certain rehabilitation vocational services implemented under Title I of the Rehabilitation Act of 1973. On October 3, 1990, Pfrommer, through one of his vocational counselors, found Doe eligible for VESID benefits. On October 8, 1990, the Rochester VESID office created an Individualized Written Rehabilitation Program (an "IWRP") for Doe with a vocational goal of writer and editor. At around that same time, VESID also contracted for an independent psychological assessment of Doe. Dr. Santo Bentivegna concluded that Doe could work as a technical writer in "some sort of domain where he would be allowed to work in an autonomous fashion."
 
 
 8
 Thereafter, between November 26, 1990 and May 6, 1991, Doe was further provided with vocational counseling through the Job Hunt Club, which provided group sessions with other VESID clients. Near the end of this period, Doe also received several sessions of individual vocational counseling from VESID counselor Cathy Acunis. In March 1991, Acunis issued an opinion that Doe was ready to seek part-time employment, but he was not ready for referral to a regular employer.
 
 
 9
 In March 1991, the Rochester VESID office also contracted with WorkGuide, a transitional employment program in Rochester that arranged for trial work opportunities for VESID clients. WorkGuide was contracted to provide Doe with vocational rehabilitation services, including weekly group counseling and some individual vocational counseling. Doe's IWRP was also amended to reflect WorkGuide's involvement and to add an additional work goal of word processor. Between March 21, 1991 and May 2, 1991, Doe met five times in pre-placement sessions with WorkGuide counselor Cynthia Pecham Goodenberger.
 
 
 10
 WorkGuide then arranged to have Doe placed in a temporary work assignment at the United Way from May 6, 1991 to November 12, 1991. After joining the United Way, Doe ceased meeting individually with Goodenberger, although he continued to participate in his group counseling sessions with WorkGuide. Despite WorkGuide's general policy that supervisors will be provided with explanations as to the VESID client's health status and special needs, Doe's supervisor at United Way never received such explanation.
 
 
 11
 In Doe's first performance evaluation at United Way, he received excellent reviews and it was noted that he got along with others. On his second performance evaluation dated July 22, 1991, Doe's overall evaluation was good, but problem areas included tardiness and working on outside projects during the day. Despite these problems, Doe did not receive any additional counseling from VESID, nor was his IWRP modified. In fact, just a few days later, on July 25, 1991, the United Way terminated Doe after he broke out in a loud phone argument with the owner of a parking lot over a disputed towing fee for Doe's car. Doe admitted that he also wrote to the owner of the parking lot regarding the dispute on United Way letterhead. The next day, on July 26, 1991, Ms. Acunis (Doe's VESID counselor) advised Doe that she would be recommending that his VESID case be closed once it received WorkGuide's final report. WorkGuide then terminated its involvement with Doe on August 1, 1991.
 
 
 12
 On August 9, 1991, Doe met with defendant-appellee Paul Pfrommer to discuss VESID's decision to close his case. On August 23, 1991, Doe then formally wrote to Pfrommer requesting reinstatement of his VESID services. On September 17, 1991, VESID sent Doe a letter explaining that his benefits had been closed because his medical condition interfered with carrying out the vocational plan. Prior to terminating his benefits, VESID did not discuss the closure of Doe's case with him because the closure had been directly discussed with and agreed to by Pfrommer. The termination letter further indicated that Doe could reapply for benefits if his mental health problems improved.
 
 
 13
 Doe appealed this decision by letter dated October 14, 1991 to Pfrommer, requesting that vocational services be reinstated pending his appeal. This request was reiterated to Pfrommer in a November 19, 1991 telephone call. In addition, in December 1991, Doe's treating psychiatrist, Dr. John Schubmehl, informed Doe's advocate that Doe might be successful in a supportive work environment if he had a job coach. Pfrommer denied this request and indicated that Doe could not receive any vocational rehabilitation services until his doctor indicated that he had gained insight into appropriate work behavior.
 
 
 14
 On March 3, 1992, Doe requested an administrative review and a fair hearing on his appeal. On June 3, 1992, Pfrommer issued an administrative review decision that again denied Doe's request for vocational rehabilitation services. Thereafter, Doe's fair hearing was held before Impartial Hearing Officer Subagh Winkelstern on June 23, 1992. At the hearing, Pfrommer stated that his decision was based on the competing needs of the taxpayer and the employers with whom VESID needed to foster good relations and that at this time only, Doe was not ready to be placed in employment because of his behavior patterns. On September 2, 1992, the hearing officer issued a decision that found that even though Doe's personality disorder was unlikely to improve with treatment, Pfrommer's decision to close the case was proper. In particular, the hearing officer found that the job coach program was not appropriate for Doe and that "it has been amply demonstrated that Mr. Doe does not have insight into his behaviors." Moreover, the hearing officer found that there was no "reasonable expectation that Mr. Doe's behaviors would change without extensive psychotherapy taking place first. It is true that Mr's Doe's personality disorder, by definition, is unlikely to change even with therapy. However, this does not change the outlook on his chances to be employable, thus the VESID decision." The hearing officer also found that Doe's "status quo" rights under New York regulations to maintain VESID benefits during appeal had been violated and ordered VESID to provide the services if defendant Deputy Commissioner Gloeckler decided to entertain a final appeal. The decision expressly stated, however, that should Gloeckler decide not to review Doe's case, "services to Mr. Doe should cease and his case should be closed." The decision concluded by stating that it "in no way precludes Mr. Doe from reapplying to VESID for services in the future, once he is able to demonstrate that [he] has gained some insight into his behaviors, as attested to by his psychotherapist."
 
 
 15
 Doe then appealed the hearing officer's decision to Gloeckler on September 10, 1992 and requested that his "status quo" rights be maintained during this period. Gloeckler then issued a letter dated September 22, 1992, which declined to review the hearing officer's decision and advised Doe to pursue further action through the judicial system.
 
 
 16
 In February 1993, Doe then filed the instant action, which raised seven claims. The first two claims asserted causes of action under § 1983 and challenged the adequacy of Doe's IWRP as required under Title I in two ways: first, the refusal to provide for a job coach in the IWRP violated plaintiff's right to have an adequate program to allow him to achieve his primary vocational goal of becoming employed as a writer, editor or word processor; second, the IWRP failed to provide for a vocational goal of being self-employed. The third and fourth claims asserted disability discrimination in violation of § 504 of the Rehabilitation Act and the ADA by refusing to provide a job coach and self-employment job goals, by closing his VESID case and by conditioning reapplication on continued psychiatric treatment. The remaining claims challenged VESID's compliance with various regulations implementing Title I as follows: (1) the defendants violated 8 N.Y.C.R.R. § 247.10(f) by terminating Doe's VESID benefits without demonstrating beyond any reasonable doubt that the individual is not capable of achieving a vocational objective; (2) the defendants violated 8 N.Y.C.R.R. § 247.10(k) in failing to provide plaintiff with "status quo" benefits during the pendency of his administrative appeal; and (3) the defendants violated 34 C.F.R. § 361.31 and 8 N.Y.C.R.R. § 247.5 by requiring special eligibility requirements for VESID services by requiring that he be referred to VESID by a treating mental health therapist prior to reapplying for VESID benefits. The complaint sought the following relief: (1) declaratory judgment that his rights had been violated as stated above; (2) an injunction ordering VESID to reopen plaintiff's case and ordering VESID to provide him with an IWRP to include a job coach and self-employment goals, and any other reasonable accommodations; (3) compensatory and punitive damages; and (4) attorneys' fees and costs.
 
 
 17
 After filing the instant complaint, VESID informed Doe in April 1994 that it would reconsider an application for VESID services without first requiring him to show improved insight into his behavior. Doe then filed an application for VESID services on May 25, 1994, seeking vocational rehabilitation services in connection with a supported work placement or home employment as a writer/editor or word processor position. At that time, Doe specifically requested a job coach and psychological counseling. Although the record is not clear as to any subsequent developments on this issue, a footnote in Judge Scullin's decision remarks that the defendants have informed plaintiff that he is eligible for a new IWRP and rehabilitative services.DISCUSSION
 
 I. DOE'S TITLE I CLAIMS
 
 18
 Title I of the Rehabilitation Act of 1973 authorizes grants to assist states in helping handicapped individuals prepare for and engage in gainful employment. 29 U.S.C. § 720(a). Title I requires states that wish to obtain federal funds to submit to the Commissioner of the Rehabilitation Services Administration a plan for vocational rehabilitation services that provides, at a minimum, for the provision of specified vocational rehabilitation services listed in 29 U.S.C. § 721(a)(8). Because this section specifically lists the "goods and services" that states must furnish to eligible clients, we held in Marshall v. Switzer, 10 F.3d 925, 929 (2d Cir.1993), that such clients were entitled to bring claims under 42 U.S.C. § 1983 to ensure compliance with these federal requirements, especially in light of the fact that there is no private right of action under Title I.
 
 
 19
 In the present case, there are three VESID decisions under scrutiny: (1) the failure to provide Doe with an adequate IWRP; (2) the outright termination of Doe's VESID benefits; and (3) the failure to provide "status quo" benefits pending the appeal of the termination of Doe's benefits. The district court dismissed all three claims as discussed below.
 
 A. Doe's Inadequate IWRP Claim
 
 20
 With regard to Doe's challenge to the substance of his IWRP, the district court dismissed this claim on the grounds that Doe failed to exhaust his administrative remedies. The district court determined that the explicit statutory language of § 722(d) of the Rehabilitation Act required Doe to present this issue first to the administrative agency prior to instituting a § 1983 action. Section 722(d) requires the director of VESID to establish a procedural scheme for reviewing determinations made by rehabilitation counselors, which will provide the handicapped person the opportunity to provide submissions to an impartial hearing officer. The administrative review procedure required under § 722(d) is codified at 8 N.Y.C.R.R. § 247.1. Because plaintiff did not raise the issue of the sufficiency of his IWRP in the administrative proceeding, the district court found that he had failed to exhaust his administrative remedies, and therefore, the court lacked subject matter jurisdiction under § 1983.
 
 
 21
 In Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Supreme Court held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." Id. at 516, 102 S.Ct. at 2568. We recently reiterated this principle in DeSario v. Thomas, 139 F.3d 80 (2d Cir.1998), and stated that Patsy 's categorical statement that exhaustion is not required and the expansive view of the federal courts in protecting constitutional rights allow plaintiffs to seek relief under § 1983 without first resorting to state administrative procedures. See id. at 86.
 
 
 22
 Of course, there are exceptions to this rule. In Heck v. Humphrey, 512 U.S. 477, 483, 114 S.Ct. 2364, 2370, 129 L.Ed.2d 383 (1994), the Supreme Court noted that " § 1983 contains no exhaustion requirement beyond what Congress has provided." Thus, exhaustion is necessary prior to bringing a § 1983 action only where Congress has carved out a specific exception to the general rule that exhaustion is not required. Patsy, 457 U.S. at 512, 102 S.Ct. at 2565. In this case, however, no such exception exists. Reviewing § 722(d), there is no requirement in the explicit or implicit language that would require an aggrieved party to first pursue all administrative remedies prior to instituting an action in federal court. We therefore reverse the district court's decision dismissing the challenge to the adequacy of Doe's IWRP in compliance with Title I and remand for further proceedings with respect to this issue.
 
 B. Termination of Doe's VESID Benefits
 
 23
 Doe also appeals the district court's decision granting summary judgment in favor of the defendants on his claim that his VESID benefits were improperly terminated. The district court granted summary judgment on the grounds that the doctrine of collateral estoppel barred redetermination of the factual issue of whether Doe was capable of achieving a vocational objective. At the relevant time, under New York regulations implementing Title I, a state agency could terminate a client's rehabilitative services if "the provision of vocational rehabilitation services has demonstrated, beyond any reasonable doubt, that the individual is not capable of achieving a vocational objective." 8 N.Y.C.R.R. § 247.10(f)(3).[1] During the same period, and prior to the 1992 amendments to the Rehabilitation Act, federal law only provided that if an IWRP was terminated, VESID had to amend the IWRP to specify the reasons for an ineligibility determination and that the evaluation of rehabilitation potential "demonstrated that the individual is not then capable of achieving a [vocational] goal."
 
 
 24
 In the present case, after Doe's VESID benefits were terminated, he requested and received a fair hearing before an Administrative Law Judge ("ALJ"). The ALJ decided that the termination of Doe's services was proper because there was no reasonable expectation that plaintiff could achieve a vocational objective. Plaintiff argued, however, that had VESID allowed an amendment of his IWRP, additional services and training could have enabled him to achieve a vocational objective.[2] The district court did not reach the merits of this claim, and instead granted summary judgment to defendants on the grounds that the ALJ's determination gave preclusive effect to the propriety of the termination of plaintiff's VESID benefits.
 
 
 25
 In University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court expressly found that issue preclusion based on unreviewed state agency determinations is appropriate in § 1983 civil rights actions. The Court reasoned that giving preclusive effect to administrative factfinding serves the value underlying general principles of collateral estoppel in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources, as well as the values of comity and federalism. Id. at 797-98, 106 S.Ct. at 3225-26. The Supreme Court held, therefore, that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate ...,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. at 799, 106 S.Ct. at 3226 (quotation omitted).
 
 
 26
 Under New York law, issue preclusion (collateral estoppel), applies when the identical issue necessarily must have been decided in the prior action and will be decisive in the present action and the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination. Juan C. v. R.C. Cortines, 89 N.Y.2d 659, 667, 679 N.E.2d 1061, 1065, 657 N.Y.S.2d 581, 585 (1997) (citation omitted). When the doctrine of collateral estoppel is to be applied to the determinations of administrative agencies, New York courts additionally require the agency's determination be "quasi-judicial" in character rather than legislative. Long Island Lighting Co. v. Imo Indus., Inc., 6 F.3d 876, 885 (2d Cir.1993) (citations omitted). Under state regulations at the time of these incidents, the fair hearing was specifically deemed "quasi-judicial." 8 N.Y.C.R.R. § 247.1(b)(5). As to the other elements, Judge Scullin determined that the issue of whether plaintiff's VESID benefits should have been terminated was identical to the issue determined by the ALJ, it was actually litigated and actually decided and that plaintiff had a full and fair opportunity to litigate the issue and was represented by an attorney, conducted discovery, called witnesses and engaged in cross-examination.
 
 
 27
 Doe argues that it was reversible error for the district court to sua sponte raise the collateral estoppel argument because it is an affirmative defense under Rule 8(c) that must be pleaded and proved. See Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). Doe complains that he did not have the opportunity to oppose the decision to apply collateral estoppel because the only pre-decision reference to this doctrine was in plaintiff's post-oral argument supplemental brief, in which he pointed out that this doctrine did not affect the court's review of this case.
 
 
 28
 Although the district court raised the issue of collateral estoppel sua sponte, this decision does not require reversal. In Salahuddin v. Jones, 992 F.2d 447 (2d Cir.), cert. denied, 510 U.S. 902, 114 S.Ct. 278, 126 L.Ed.2d 229 (1993), for example, we held that the failure of a defendant to raise res judicata does not deprive a court of the power to dismiss a claim on that ground. We noted that "[w]hile that or similar defenses are 'ordinarily' not to be recognized when not in the answer, ... no absolute bar to the consideration of such claims exists." Id. at 449 (citing Davis v. Bryan, 810 F.2d 42, 44 (2d Cir.1987)); but cf. Bryan, 810 F.2d at 45 (reversible error for court to sua sponte raise affirmative defense of expiration of statute of limitations in deciding motion for summary judgment). In Salahuddin, examining the related doctrine of res judicata, the strong public policy in economizing the use of judicial resources by avoiding relitigation favored the court's decision to sua sponte consider the issue. Likewise, in this case, strong public policy favors giving preclusive effect to the ALJ's factual determinations. Therefore, the decision of the district court to apply collateral estoppel was not in error.
 
 
 29
 Plaintiff argues in the alternative, however, that the Supreme Court's decision in Elliott does not preclude legal review of plaintiff's claim that the defendants improperly terminated his IWRP. Currently, this circuit has not taken a position regarding the split in the circuits as to whether to give preclusive effect to the unreviewed legal determinations of state administrative decisions. See DeSario, 139 F.3d at 86. The issue need not be decided at this juncture either as Doe has failed to state a cognizable § 1983 claim arising from the termination of his VESID benefits.
 
 
 30
 With respect to the termination of his VESID benefits, Doe, in his complaint and on appeal, has challenged solely whether "VESID had shown 'beyond any reasonable doubt' that he was not capable of achieving a vocational objective pursuant to 8 N.Y.C.R.R. § 247.10(f)(3)." As mentioned previously, when the ALJ made the determination as to plaintiff's VESID benefits, there was no federal requirement of proof beyond any reasonable doubt that the vocational objective could not be achieved. Doe's challenge, therefore, does not focus on any conflict between the defendants' policies with federal regulations. Nor does this aspect of his appeal focus on any failure to comply with federal statutes or regulations. Rather, Doe's concern lies elsewhere-that VESID is not following its own regulations.
 
 
 31
 We have previously held in other contexts that a state authority's failure to comply with its own statutory regulations does not facially implicate an interest secured by the laws of the United States in order to assert a § 1983 claim. Oberlander v. Perales, 740 F.2d 116, 119 (2d Cir.1984). In Oberlander, we rejected the argument that a violation of a state regulation that must conform to the federal Medicaid statute, in itself, provides a basis for the denial of a federal right under § 1983. To allow such claims "would provide a jurisdictional basis for federal judicial review of every disputed state administrative ruling relating to Medicaid." Id. For example, while "suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating States, ... there is no authority anywhere supporting the proposition that a state Medicaid regulation becomes a federal law merely by virtue of its inclusion in a state plan required by federal law." Id. (quotation omitted). It is only when there is a specific conflict between the federal mandate and the state plan or practice that a federal right is implicated. Id.
 
 
 32
 In keeping with this latter holding, not too long ago we addressed the issue of the enforceability via § 1983 of rights created under Title I of the Rehabilitation Act. In Marshall v. Switzer, 10 F.3d 925 (2d Cir.1993), we recognized that because no private right of action existed under Title I, a plaintiff could assert a § 1983 claim based on a violation of Title I's federal rules and regulations. We allowed that claim to survive, however, because the plaintiff specifically challenged a VESID policy that conflicted with federal mandates. In particular, the plaintiff challenged VESID's policy of prohibiting reimbursement for "factory-installed" options in vehicles for disabled VESID participants, whereas Title I contained a specific and definite mandate in § 721(a)(8) & (9) to the states to provide transportation services which are necessary to render the client employable. See id. at 929.
 
 
 33
 In this case, however, Doe has failed to point to any violation of a specific federal requirement in Title I with regard to the procedure for terminating his VESID case. Quite to the contrary, Doe asks for a de novo review of the record to determine whether VESID was able to show that there was no reasonable doubt about Doe's ability to benefit from additional vocational service in September 1991. Thus, while § 1983 can provide relief where VESID either has a policy or practice that conflicts with federal requirements or fails to otherwise comply with Title I, this type of administrative review to determine compliance with state regulations is not cognizable under § 1983. See also Mallett v. Wisconsin Div. of Vocational Rehab., 130 F.3d 1245, 1254-55 (7th Cir.1997) (recognizing that while the agency's failure to follow a specific federal requirement under Title I is cognizable under § 1983, when the agency fails to follow its own administrative procedures, § 1983 cannot be the basis for review). Accordingly, notwithstanding any collateral estoppel or res judicata arguments, plaintiff has failed to state a § 1983 claim for the termination of his VESID vocational rehabilitation services in violation of 8 N.Y.C.R.R. § 247.10(f)(3).
 
 C. Denial of Doe's "Status Quo" Benefits
 
 34
 This brings us to Doe's final challenge to VESID's conduct, purportedly under Title I, that the district court erred in determining that there was no jurisdictional basis for the court to remedy defendants' failure to maintain Doe's services during his administrative appeals. Judge Scullin declined to exercise jurisdiction over plaintiff's claim that he was not provided with "status quo" vocational benefits during the pendency of his fair hearing determination. The ALJ had previously ruled that plaintiff was improperly denied these rights, and Judge Scullin found that since Doe was not aggrieved by the ALJ's decision, enforcement of that decision had to proceed in state court.
 
 
 35
 Plaintiff argues that the issue of his "status quo" rights was a question of federal law which the court was required to entertain. At the time of Doe's appeal, however, there was no federal requirement to provide "status quo" benefits.[3] As discussed in connection with plaintiff's termination of benefits claim, Doe alleges only that the state did not comply with its own state regulations regarding "status quo" benefits provided under 8 N.Y.C.C.R.R. § 247.1(k). Although the district court did not appear to consider this aspect of Doe's claim, we hold that Doe has failed to assert a cognizable § 1983 claim with respect to his "status quo" benefits.
 
 
 36
 II. PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS
 
 
 37
 Plaintiff also raises disability discrimination claims under § 504 of the Rehabilitation Act and ADA § 12132, claiming that VESID failed to provide him with reasonable accommodations for his mental illness in formulating his IWRP to include a job coach and self-employment goals and in terminating his benefits until he received continued mental therapy to realize the problems with his work-related behavior. Judge Scullin dismissed these claims on the grounds that plaintiff failed to make a prima facie showing that he was "otherwise qualified" for the benefits he sought. We agree with Judge Scullin's conclusion that these claims are without merit, but for slightly different reasons.
 
 
 38
 Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under § 504 of the Rehabilitation Act, "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).
 
 
 39
 At the outset, on their face, the court notes that Doe's discrimination claims do not draw their substance from any allegedly discriminatory animus against the disabled, either under a disparate treatment or disparate impact theory. Such an argument would be beyond tenuous given VESID's sole purpose in assisting the disabled. Rather, his challenge derives from VESID's failure to provide him with tailored vocational services, which he terms as "reasonable accommodations," because of the particular needs of his disability. While such particularized treatment among the many services provided by VESID to the disabled may be required under Title I, it is not necessarily required under the anti-discrimination provisions of the Rehabilitation Act, or by implication, the ADA. See Flight v. Gloeckler, 68 F.3d 61, 64 (2d Cir.1995) ("challenges to the allocation of resources among the disabled under the Rehabilitation Act are disfavored"). In reviewing Doe's discrimination claims, therefore, it is important to bear in mind that the purposes of such statutes are to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied. See Southeastern Comm. College v. Davis, 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979); 45 C.F.R. § 84.1; 28 C.F.R. § 35.101. In the case before us, it is clear that the plaintiff is in essence challenging the adequacy of his VESID services, not illegal disability discrimination.
 
 
 40
 In order to establish a violation of § 504 of the Rehabilitation Act, a plaintiff must show: (1) that he has a disability for purposes of the Rehabilitation Act; (2) that he was "otherwise qualified" for the benefit that has been denied; (3) that he has been denied the benefits "solely by reason" of his disability; and (4) that the benefit is part of a "program or activity receiving Federal financial assistance." Flight, 68 F.3d at 63. The requirements under the ADA are nearly identical; any distinctions are not relevant for the purposes of this discussion. In the present case, there is no dispute that Doe is disabled within the meaning of the Rehabilitation Act or the ADA. Nor do the defendants dispute that for Rehabilitation Act purposes, VESID is a program receiving federal financial assistance or that for ADA purposes, VESID is a public entity. The question, therefore, would seem to be whether plaintiff was otherwise qualified.
 
 
 41
 Initially, Doe is correct to the extent that reasonable accommodations are required in the provision of public benefits under the ADA and in enabling handicapped individuals to participate in federally funded programs under the Rehabilitation Act. Under the ADA, Congress has defined "qualified individual with a disability" as an individual with a disability "who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104. Although no statutory provision or regulation speaks directly of reasonable accommodations under Title I of the Rehabilitation Act, the Supreme Court has ruled that eligibility for a federally assisted benefit "cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." Alexander v. Choate, 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985).
 
 
 42
 In the context of federal or public programs directed specifically at the disabled, however, it is difficult to apply the traditional analysis for determining whether an applicant meets the "otherwise qualified" prong of his prima facie case. Cf. United States v. University Hosp., 729 F.2d 144, 156 (2d Cir.1984) ("the phrase [otherwise qualified] cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning"). For instance, the Supreme Court has held that under the Rehabilitation Act, an "otherwise qualified" person is one who is able to meet all of the programs' requirements in spite of his handicap. Davis, 442 U.S. at 406, 99 S.Ct. at 2367. As such, in this case, the district court ruled that plaintiff was not "otherwise qualified" because he could not show that he was eligible for VESID benefits despite his handicap. Rather, the only reason he was eligible was because of his handicap. See also Mallett, 130 F.3d at 1257 (because plaintiff would not have been eligible for Title I benefits without his handicap, he was not "otherwise qualified" for purposes of § 504). Under the district court's reasoning, where plaintiffs are only eligible for a public benefit because of their status as individuals with a disability, they could never assert a claim for discrimination under the Rehabilitation Act because they could never show they were qualified despite their handicap. For example, in Cushing v. Moore, 970 F.2d 1103 (2d Cir.1992), where an individual with a drug addiction was denied treatment in a rehabilitation clinic, we stated that "[i]t is difficult to envision a drug addict receiving methadone treatment in spite of his drug addiction, because it is his drug addiction that brings him to participate in the methadone program in the first place." Id. at 1108.
 
 
 43
 We have previously recognized that where the handicapping condition is related to the benefit provided, it will rarely, if ever, be possible to say with certainty that a particular decision was "discriminatory." University Hosp., 729 F.2d at 157. As noted by the Supreme Court in Alexander, "the question of who is 'otherwise qualified' and what actions constitute 'discrimination' under [§ 504] would seem to be two sides of a single coin; the ultimate question is the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handicapped." 469 U.S. at 299 n. 19, 105 S.Ct. at 719 n. 19. The appropriate focus in the case before us, therefore, is not whether Doe is "otherwise qualified" for VESID benefits, but the extent to which the defendants are required by the anti-discrimination statutes to modify their programs to meet all of Doe's needs as a disabled individual.
 
 
 44
 Reaching this "ultimate question," the court finds that the "reasonable modifications" requested by the plaintiff are not required under the ADA or the Rehabilitation Act. As discussed previously, the central purpose of the ADA and § 504 of the Rehabilitation Act is to assure that disabled individuals receive "evenhanded treatment" in relation to the able-bodied. For example, in Flight, a VESID client brought a claim under § 504 of the Rehabilitation Act and the ADA asserting that VESID discriminated against him on the basis of his disability (multiple sclerosis) because the agency refused to fund modifications to plaintiff's van. We rejected this claim because neither the ADA nor the Rehabilitation Act establish an obligation to meet a disabled person's particular needs vis-a-vis the needs of other handicapped individuals, but mandate only that the services provided by VESID to non-handicapped individuals not be denied to a disabled person because he is handicapped. 68 F.3d at 63-64 (quoting P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir.1990)). Because the plaintiff in Flight did not allege disparate treatment as compared to the benefits given to non-handicapped individuals, we affirmed the dismissal of the discrimination claim. Id. at 64; see also Lincoln Cercpac v. Health and Hosp. Corp., 977 F.Supp. 274, 280 (S.D.N.Y.1997) (dismissing § 504 and ADA claim of a class of disabled school children who challenged the defendant's decision to close its rehabilitation clinic for mentally disabled children because the plaintiffs could not allege that any clinic benefits were available to nonhandicapped persons that were being denied to them).
 
 
 45
 Likewise, in this case, what Doe ultimately seeks to challenge is not illegal discrimination against the disabled, but the substance of the services provided to him through VESID. To provide the modifications he seeks would not serve the purpose of leveling the playing field with respect to the benefits under VESID available to the non-handicapped. Accordingly, we affirm the district court's grant of summary judgment on plaintiff's claims for discrimination under § 504 of the Rehabilitation Act and the ADA.
 
 CONCLUSION
 
 46
 For the foregoing reasons, we affirm the district court's grant of summary judgment on Doe's claims for the termination of his VESID benefits, the failure to provide "status quo" benefits pending his appeal and for discrimination under § 504 of the Rehabilitation Act and the ADA. We reverse the grant of summary judgment on Doe's claims regarding the adequacy of his IWRP and remand for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Joanna Seybert, District Judge for the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 Current state regulations now mirror the amended federal laws relating to VESID eligibility and termination of benefits. See 29 U.S.C. § 722(a)(4)(A) ("It shall be presumed that an individual can benefit in terms of an employment outcome from vocational rehabilitation services ... unless the designated State unit can demonstrate by clear and convincing evidence that such individual is incapable of benefiting from vocational rehabilitation services in terms of an employment outcome"); 8 N.Y.C.R.R. § 247.5(c)(1) (an applicant "will be presumed to be able to benefit in terms of an employment outcome from vocational rehabilitation services unless it is demonstrated otherwise on the basis of clear and convincing evidence")
 
 
 [2]
 This particular argument, as with many of Doe's arguments, merely rephrases his claim that his IWRP was inadequate. To the extent the district court did not reach this issue, we remand for the reasons stated earlier in this opinion
 
 
 [3]
 In October 1992, Title I was amended to include a provision requiring state agencies to provide VESID services pending a final determination of the application's hearing or other final resolution. 29 U.S.C. § 722(d)(5)