LINCOLN CERCPAC, Stacey Ellis, in her individual capacity and as a general guardian of infant Abraham Ellis, Abraham Ellis, an infant, Margarita Agosto, in her individual capacity and as a general guardian of infant Jesus Cortes, Jr., Jesus Cortes, Jr., an infant, Elsa Lopez, in her individual capacity and as a general guardian of Victor Galarza, Jr., Victor Galarza, Jr., an infant, Ercilia Santos, in her individual capacity and as a general guardian of Anthony Perez, and Anthony Perez, an infant, Plaintiffs,

v.

HEALTH AND HOSPITAL
CORPORATION,
Defendant.

No. 95 Civ. 7154(CBM).

United States District Court,
S.D. New York.

Sept. 4, 1997.

Kipp Elliot Watson, New York City, for Plaintiffs.

City of New York Law Dept. by Todd Bromberg, James Girillo, New York City, for Defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### BACKGROUND and PROCEDURAL HISTORY

Plaintiffs, Lincoln Children's Evaluation and Rehabilitation Clinic Parent Action Com-

mittee ("CERCPAC"), are an ad hoc committee of parents whose children where once serviced by the now defunct Lincoln Hospital Children's Evaluation and Rehabilitation Clinic ("CERC"). In Spring, 1995, plaintiffs learned that due to federal and state budgetary reductions, the Health and Hospitals Corporation ("HHC"), which manages New York Hospitals, would be relocating CERC's diagnostic and evaluative services to Morrisania Center for Child Development ("Morrisania") and closing CERC on August 31, 1995. On August 29, 1995, plaintiffs moved for an ex parte temporary restraining order ("TRO") to enjoin the closing of CERC two days later, as scheduled.

On August 30, 1995 plaintiffs commenced the present action seeking a TRO and preliminary injunction to enjoin CERC's closing, class certification, a permanent injunction to enjoin HHC from discriminating against the disabled and from failing to provide an effective grievance procedure or properly evaluate its policies, and a declaratory judgment that HHC had violated both the Rehabilitation Act of 1973 ("Rehab Act") and the Americans with Disabilities Act of 1990 ("ADA") by failing to provide equal access to HHC health care services. Plaintiffs' motion for a TRO was heard on August 31, 1996 and denied the same day by Judge Kaplan.[1] On August 31, 1995, CERC was closed as scheduled with only a few staff members remaining to facilitate the transfer of services to Morrisania.

On September 14, 18, 19, 20, and 21, 1995, this court held a hearing on plaintiffs' preliminary injunction ("PI") motion.[2] On Septem-

---

1. Judge Kaplan found that:

   The conflicting evidence fails to persuade the Court that plaintiffs will suffer irreparable injury as a result of the transfer of the functions previously performed by Lincoln CERC to Morrisania Hospital. There is no evidence that the decision to close Lincoln CERC was made *because* plaintiffs' children are disabled and no persuasive evidence of disparate impact of a character likely to result in plaintiffs' prevailing. *See Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). *Lincoln Cercpac, et al. v. Health and Hospitals Corp.,* No. 95–7154 (Order filed August 31, 1995) (Kaplan, J.) (emphasis in original).

2. Witnesses for both sides testified. "Plaintiffs called six witnesses: Stacey Stan Ellis, a named plaintiff; Margarita Agosta, a named plaintiff; Louis Rodriguez, Senior Associate Dean of New York Medical College; Daniel S. Friedman, Associate Director and Administrator of Rose F. Kennedy Children's Evaluation and Rehabilitation Center; Lilia Evangelista, former Medical Director of CERC; and Elias S. Gootzeit, Executive Director Elect of Applied Human Dynamics. Defendant called five witnesses: Terese Rotondo, Associate Executive Director for the Department of Psychiatry and Mental Health at Lincoln; Mario Rendon, Director of Psychiatry at Lincoln; Erica Jeffries, Director of Budget and Reimbursement at Morrisania; Peter Wolf, Chief Financial Officer at Lincoln; and Hector Coll Ruiz,

ber 12, 1995, HHC filed papers opposing plaintiffs' motion for PI and class certification and a motion to dismiss with a return date of September 28, 1995. During the hearings and at plaintiffs' request, this court adjourned the return date and extended plaintiffs' time to respond to the motion to dismiss until after a decision on the PI motion was rendered. After the hearing, the court reserved decision on the PI motion. On March 21, 1996, the court issued an opinion denying plaintiffs' class certification and PI motion. The court held that it did not deem class certification necessary since class certification would not further implementation of the court's judgement in that HHC was comprised of public officials who were obligated to comply with federal and state laws. *Lincoln CERCPAC*, 920 F.Supp. at 493–94.

The court denied the PI on the grounds that plaintiffs failed to make a strong showing of irreparable harm[3] due to HHC's transfer of CERC's services and client responsibility to Morrisania, a hospitable located about a mile from CERC. *Id.* at 495. The court also found that plaintiffs failed to make a clear and substantial showing of a likelihood of success on the merits of their ADA and Rehab Act claims. The court's decision in regards to the ADA and Rehab Act claims was based on plaintiffs' failure to show or claim that the disabled were being denied, based on their disability, health care services or equal access to health care services that were being provided to the non-disabled general public. *Id.* at 496–97.

On August 24, 1996, the court issued an order directing the parties to appear for a pretrial conference on September 26, 1996, given defendant's pending motion to dismiss which was stayed until the court rendered a decision on plaintiffs' PI motion. On September 24, 1996, due to plaintiffs' failure to submit opposition papers, this court issued an order by fax dismissing plaintiffs' claims and granting defendant's motion to dismiss by default, pursuant to Local Rule 3(b).[4] On September 30, 1996, a default judgment was entered. On October 8, 1997, plaintiffs moved to vacate entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55(c) or 60(b).[5] On October 23, 1996, plaintiffs appealed this court's default judgment but withdrew their appeal without prejudice to give the court an opportunity to decide on their motion to vacate. On January 23, 1997, the court set aside the default judgment on the grounds that there was confusion as to when plaintiffs' reply papers were due because of the stay of the motion to dismiss. Plaintiffs filed opposition papers on or about February 28, 1997 and defendants filed papers in further support of its motion to dismiss on or about March 2, 1997. For the reasons discussed herein, this court grants defendants motion to dismiss.

Director of the Department of Mental Health at Morrisania." *Lincoln CERCPAC v. Health and Hospitals Corporation*, 920 F.Supp. 488, 493 n. 7 (S.D.N.Y.1996).

3. The court found that plaintiffs had to meet the heightened standard of a "strong showing of irreparable harm" and a "clear" or "substantial" showing of a likelihood of success on the merits for the court to issue a "mandatory" preliminary injunction which alters the status quo, i.e., reopen and transfer services and clients back to CERC. *Lincoln CERCPAC*, 920 F.Supp. at 494 (citing *Doe v. New York University*, 666 F.2d 761, 773 (2d Cir.1981)).

4. The rule reads in relevant part:

Upon any motion, the moving party shall serve and file with the motion papers a memorandum setting forth the points and authorities relied upon in support of the motion ... The opposing party shall serve and file with the papers in opposition to the motion and an answering memorandum ... setting forth the points and authorities relied upon in opposition. *Failure to comply may be deemed sufficient cause for the denial of the motion or the granting of the motion by default.*

Local Rule 3(b)(emphasis added); *see also, Giordano v. General Motors Corp., et al.*, 1996 WL 185678, 2 (S.D.N.Y.) ("Local Rule 3(b) provides that the court may grant a motion to dismiss on default when the non-moving party fails to respond").

5. Rule 55(c) provides that "for good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. Rule 55(c). Rule 60(b) permits district courts to "relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons; (1) mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. Rule 60(b)(1).

## FACTS

The facts as alleged in the complaint are as follows; HHC is a public New York corporation that receives federal financial assistance and manages New York City's system of municipal hospitals in providing health care services. Under HHC management, Lincoln Hospital has operated CERC since 1968. CERC is certified by the New York State Office of Mental Retardation and Developmental Disabilities as an Article 16 Comprehensive Specialty Clinic for children with developmental disabilities pursuant to 14 NYCRR, part 679, and is exempt from New York State's transition into a managed care system for Medicare recipients. (Complaint ¶¶ 24, 29). It serves approximately 3,500 children at risk of developing or with developmental disabilities in the South Bronx and North Manhattan regional area by providing referral, evaluative, therapeutic, pediatric, rehabilitative, social work and specialized treatment services. (Complaint ¶¶ 1, 32).

CERCPAC is a committee with no formal membership structure but has active members who voice their opinions on health care issues, advocate for children who are CERC outpatients, participate in advisory board meetings, and demonstrate, petition, call, and write letters to HHC officials. (Complaint ¶ 11). Stacy Ellis, the most active CERC-PAC member, is the mother of Abraham Ellis, a ten year old child with developmental disabilities that include neurological and orthopedic impairments and mental retardation. (Complaint ¶¶ 12, 13). He is unable to walk, sit, dress, eat or use the toilet by himself and uses a specially designed wheelchair. "[B]ecause of specialized services received from CERC," Abraham has improved in language receptive skills, in responding to familiar voices, in communicating via generalized gestures and in expressing basic emotions. (Complaint ¶ 13). Margarita Agosto is· the mother of Jesus Cortes, Jr., a seven year old child with neurological, orthopedic, and visual impairments and mental retardation. He has been diagnosed with Dandy Walker Syndrome and Joubert's Syndrome, resulting in quadroaresis, legal blindness, a gastrotomy, seizures and respiratory distress, and has had a tracheostomy to relieve respiratory distress. (Complaint ¶¶ 14, 15).

Jesus cannot tolerate traveling due to his 24 hour dependency on the intake of humidified compressed air due and his need for frequent suctions of excessive secretions.

Elsa Lopez is the grandmother and primary caretaker of Victor Galarza, Jr. who was born addicted to cocaine and heroin on August 4, 1988. He was referred to CERC at one and a half years of age, was diagnosed with Attention Deficit Disorder, receives 20 mg. of ritalin twice a day to manage his behavior, and attends P.S. 208 which has an on-site health care program that coordinates treatment and health care with CERC. Plaintiffs claim that the effectiveness of Victor's treatment would be hampered if he were transferred to unfamiliar health care professionals. Ercilia Santos is the mother of Anthony Perez, who was born one month premature on August 29, 1993, has Down Syndrome, orthopedic impairments, asthma and chronic pneumonia due to constant congestion, and receives coordinated services at CERC from "specialists in pediatrics, physiatry, ear, nose and throat, neurology, genetics and opthomology." (Complaint ¶ 19). Plaintiffs allege that all of the children's health and safety depends on the continuity of CERC's "specialized diagnostic, treatment and rehabilitative services." (Complaint ¶¶ 13, 15, 17, 19).

Plaintiffs allege that HHC has recognized in the past that in order to provide equal access to health care services of HHC to developmentally disabled children, they must be provided with services in a specialized setting like CERC. (Complaint ¶ 33). Many of CERC's patients are referred from other hospitals. As of June 30, 1995, CERC has stopped accepting referrals due to HHC intentions of closing CERC on August 31, 1995 and of transferring CERC patients to Morrisania. Plaintiffs allege that Morrisania has admitted in a memorandum dated June 30, 1995 to not providing services to developmentally disabled children under age 5 and to those who do not have a psychiatric diagnosis (Complaint ¶ 41) and has admitted that it will not provide the same variety of services as CERC once the proposal is funded by HHC. Plaintiffs allege that CERC has made no referrals for any of its patients since June 2,

1995 because there are no suitable alternative appropriate health care providers in the area. Plaintiffs also acknowledge that HHC officials have stated that Morrisania will be provided with funds to accept CERC referrals. However, plaintiffs claim that these funds will not be sufficient to "[maintain] a level of health care services that would ensure that [plaintiffs] receive access to the services equal to that provided by HHC to others." (Complaint ¶ 44).

Plaintiffs alleges that no other facility in the South Bronx and Northern Manhattan regions provides the same quality and quantity of services as CERC and that HHC is discriminating against the disabled by closing this facility and failing to provide grievance mechanism to ensure that its policy decisions do not discriminate on the basis of disability.

## DISCUSSION

### I. Motion to Dismiss Standard

A court may grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Although a court must take "as true the facts alleged in the complaint and [draw] all reasonable inferences in the plaintiffs favor," *Jackson National Life Insurance Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994), a complaint that consists of nothing more than bald assertions and claims with no facts upon which a court could find a violation fails to state a claim under Rule 12(b)(6). *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir.1994). The court now turns to plaintiffs' Rehab Act and ADA claims.

### 1. Rehab Act Claim

The Rehab Act provides, in relevant part: No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...

29 U.S.C. s 794(a). The Rehab Act is also applicable to instrumentalities of local governments. *Id.* at 794(1)(A). In this case, both sides agree that plaintiffs are "disabled" and defendant is a "public entity" receiving federal financial assistance within the meaning of the Rehab Act; however, the nature of the dispute centers around the third prong which is whether plaintiffs have been denied benefits solely by reason of their disability.

Plaintiffs allege that they are being denied, based on their disability, the benefit of the quality and quantity of CERC services due to CERC's closing and the transfer of CERC services and patients to Morrisania. They allege that the denial of this benefit will result in the loss of equal and meaningful access to HHC health care services that are provided to the general public. HHC contends that the Rehab Act does require states to provide specialized services to the disabled because they may require these services as a result of their disability but only requires the states to provide the same health care services that are provided to the non-disabled to the disabled. Defendants assert that because CERC provided these specialized health care services to the disabled and not the general public, the transfer of CERC services to Morrisania does not violate the Rehab Act because plaintiffs are not being denied a service that is provided to the general public.

To establish a violation of the Rehab Act, plaintiffs must show that (1) they are "handicapped persons" under the Act; (2) they are "otherwise qualified" for the benefit that has been denied; (3) they are being denied benefits solely by reason of their disabilities; and (4) the entity denying plaintiffs benefits receives federal financial assistance. *Flight v. Gloeckler, et al.*, 68 F.3d 61, 63 (2d Cir.1995) (citations omitted); *Rothschild v. Grottenthaler*, 907 F.2d 286, 289–90 (2d Cir. 1990). The dispositive case on the limits of the Rehab Act is *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). In that case, disabled plaintiffs brought a class action challenging Tennessee's reduction in the number of annual days of in patient hospital care covered by Medicaid.

■ The Supreme Court reversed the United States Court of Appeals for the Sixth Circuit's decision that plaintiffs had a cognizable claim under the Rehab Act. Although the Court emphasized that otherwise qualified disabled persons' rights to "meaningful and equal access" to health care benefits is guaranteed by the Rehab Act, the Court explicitly stated that "the State is not required to assure the handicapped 'adequate health care' *by providing them with more coverage than the non-handicapped."* *Id.* at 306, 309, 105 S.Ct. at 722, 724 (emphasis added). It is, therefore, clear that the Rehab Act "mandates only that services provided non-handicapped individuals not be denied [to a disabled person] because he is handicapped." *Flight,* 68 F.3d at 63–64 (dismissal of plaintiff's Rehab Act claim affirmed because plaintiff only alleged denial of a benefit that was only available to the disabled); *Lincoln CERCPAC,* 920 F.Supp. at 496 (citing *Flight).*

■ In this case, plaintiffs allege in the complaint that they are being discriminated against based on their disability due to CERC's closing and transfer to a location that will not provide the same quality and quantity of specialized services. Weighing all the facts in favor of plaintiffs, the court finds that plaintiffs have clearly failed to state a claim upon which relief can be granted since CERC only provided specialized services to disabled individuals and not the public at large. The court finds that although HHC chose to provided specialized services to disabled children via CERC, the Rehab act does not prohibit them from discontinuing to provide these services at CERC much less transferring them to another facility. *see,* 45 C.F.R. § 84 App. A P 33 (health care institutions "are not required ... to provide specialized services and aids to handicapped persons in health programs"). In *Alexander,* the Supreme Court found:

In enacting the [Rehab Act] and in subsequent amendments, Congress did focus on several substantive areas—employment, education, and the elimination of physical barriers to access—in which it considered the societal and personal costs of refusals to provide meaningful access to be particularly high. *But nothing in the pre- or post 1973 legislative discussion of s 504 suggests that Congress desired to make major inroads on the State's longstanding discretion to choose the proper mix of amount, scope, and duration limitations on services covered by Medicaid.*

469 U.S. at 306–307, 105 S.Ct. at 723 (emphasis added, footnotes and citations omitted). In this action, plaintiffs have not alleged any CERC services or benefits available to the non-disabled that are being denied to them. Furthermore, plaintiffs have failed to allege any HHC health care services that are being provided to the public at large and denied to them.[6] Plaintiffs' Rehab Act claim is therefore dismissed.

#### 2. ADA claim

■ Title II of the ADA provides in relevant part:

[N]o qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. s 12132. The ADA prohibits discrimination against the disabled in public services. The legislative history of the ADA reveals that the clear Congressional intent was to extend the Rehab Act's proscription

---

**6.** In the complaint, plaintiffs also allege that they are being denied equal access to health care services and benefits due to the closing of CERC. However, the court finds that this claim is conclusory and a bald assertion completely unsupported by the facts or pleadings in the complaint. As noted above, plaintiffs have not alleged or identified a HHC service or benefit in which they are being denied equal access. The court also finds that plaintiffs' claim that defendants failed to provide an effective grievance procedure in violation of the Rehab Act and ADA is also conclusory and unsupported by the factual allegations in the complaint. Therefore, the court grants defendant's motion to dismiss on these grounds as well. *see, Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996) (assertions that are wholly conclusory are not sufficient to defeat a 12(b)(6) motion); *Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990) ("A conclusory allegation ... without evidentiary support or allegations of particularized incidents, does not state a valid claim.").

to all state and local government programs and services irrespective of funding. *see,* H.R.Rep. No. 101–485(II), 101st Cong., 2d Sess. 84 (1990). Regulations implementing the ADA "confirm the uniformity of interpretation between the ADA and the Rehab Act." 28 C.F.R. § 35.103; *see also, Hope v. Cortines,* 872 F.Supp. 14, 19 (E.D.N.Y.1995) (enforcement provision of ADA incorporates the enforcement provision of the Rehab Act).

 Therefore, the ADA requirements for establishing a violation is similar to that of the Rehab Act and case law interpreting the Rehab Act is relevant to claims arising under the ADA. To establish a violation under the ADA, the plaintiff must show: (1) he or she is a "qualified individual with a disability," (2) he or she is being excluded from participation in or being denied the benefits of some service, program or activity by reason of his or her disability, and (3) "the entity which provides the service, program or activity is a public entity." *see, Civic Association of the Deaf v. Giuliani,* 915 F.Supp. 622 (S.D.N.Y.1996) (citing *Clarkson v. Coughlin,* 898 F.Supp. 1019 (S.D.N.Y.1995)).

In this action and as has been noted above, the parties do not dispute that plaintiffs are disabled and that defendant is a public entity. Plaintiffs allege in the complaint that they are being denied "specialized diagnostic, treatment and rehabilitative services from CERC." However as discussed previously, the disabled do not have a right to more public services than the non disabled, even if the disabled need them. *see, Alexander,* 469 U.S. at 301–02, 105 S.Ct. at 720–21; *Castellano v. City of New York,* 946 F.Supp. 249, 255 (S.D.N.Y.1996) (court noted that "in essence, plaintiffs seek special treatment rather than simply nondiscriminatory treatment") (citations and quotations omitted). Here, plaintiffs themselves define the services provided at CERC as "specialized services." *see,* Complaint ¶¶ 13, 15, 17, 19. Plaintiffs do not claim that they have been denied a service that the abled receive, i.e., CERC services, do not allege a HHC service that they are being denied nor allege any supportable facts upon which the court could conclude that they have been denied equal access to a general health care service. The court therefore, dismisses plaintiffs' ADA claim for failing to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons discussed herein, the court grants defendant's motion to dismiss and dismisses plaintiffs' Rehab Act and ADA claims.

SO ORDERED