Lincoln CERCPAC, et al.,
Plaintiffs–Appellants,

v.

**HEALTH AND HOSPITALS CORPORATION, et al.,**
Defendants–Appellees.

**Docket No. 97–9280.**

United States Court of Appeals,
Second Circuit.

Argued April 30, 1998.

Decided June 10, 1998.

Kipp Elliott Watson, New York City, for plaintiffs-appellants.

Jane S. Earle, Office of the Corp. Counsel, New York City (Jeffrey D. Friedlander, Acting Corp. Counsel, Pamela Seider Dolgow, James A. Girillo, New York City, on the brief), for defendants-appellees.

Before: NEWMAN and LEVAL, Circuit Judges, and WEXLER,* District Judge.

JON O. NEWMAN, Circuit Judge:

This case involves a challenge under the Rehabilitation Act and the Americans with Disabilities Act ("ADA") to a municipal agency's decision to close a specialized health care facility that treats children with developmental disabilities. Lincoln CERCPAC, an association of individuals and families concerned with health care services for children with developmental disabilities, and four parents or guardians of minor children with disabilities appeal from the September 10, 1997, judgment of the District Court for the Southern District of New York (Constance Baker Motley, District Judge), dismissing their complaint, pursuant to Fed.R.Civ.P. 12(b)(6). Because we agree that the complaint alleges only that the closing will reduce care and does not allege that any plaintiff, by reason of disability, is being denied care furnished to persons without disabilities, we affirm.

## Background

This case arises from the 1995 decision by the New York City Health and Hospitals Corporation ("HHC"), in consultation with Lincoln Medical and Mental Health Center ("Lincoln"), to close the Children's Evaluation and Rehabilitation Clinic ("CERC") at Lincoln. The bulk of the services formerly performed by CERC would then be provided by Morrisania Center for Child Development ("Morrisania"), which is also located in the Bronx, approximately one mile from Lincoln.

The plaintiffs filed their lawsuit in August of 1995. The complaint alleged the following facts, which we presume to be true for purposes of reviewing the District Court's dismissal. Lincoln, "under the aegis of HHC," has operated CERC continuously since 1968. Complaint ¶ 23. In the past, HHC

> has ... recognized that in order to meet the goal of providing for the health care needs of the instant class, comprehensive services must be delivered in a holistic setting, such as CERC. These services include referral, evaluative, therapeutic, pediatric, rehabilitative, social work and specialized treatment services.

*Id.* ¶ 32. However, CERC ceased accepting new patients on June 30, 1995, and HHC planned to close CERC effective August 31, 1995, which it did. *See Lincoln Cercpac v. Health and Hospital Corp.*, 977 F.Supp. 274, 275 (S.D.N.Y.1997) ("*Lincoln Cercpac II* "); *Lincoln CERCPAC v. Health and Hospitals Corp.*, 920 F.Supp. 488, 491 (S.D.N.Y.1996) ("*Lincoln CERCPAC I* ").

After that date, "HHC intends to refer most of the patients currently served by CERC to Morrisania Center for Child Development ..., which is at a site involving increased traveling difficulties for most CERC patients." Complaint ¶ 39. Although HHC plans to provide funds to Morrisania for accepting patients formerly serviced by CERC, officials at Morrisania have admitted that they do not currently provide services to developmentally disabled children under age five or to those who do not have a psychiatric diagnosis, *see id.* ¶ 40, and have also admitted that "even when a current proposal is fully funded by HHC, it will not provide the same panoply of services presently provided by CERC." *Id.* ¶ 41. Additionally, since the funds would not be provided immediately upon the cessation of CERC's services, the plaintiffs would suffer a disruption in the services offered to them by HHC.

The plaintiffs asserted principally that these acts had violated their rights under section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (1994), and under the ADA to "equal access to the health care services provided by the HHC." Complaint ¶ 52. The plaintiffs sought an injunction, prohibiting HHC from discriminating against people with disabilities, and a declaratory judgment that HHC had violated the ADA and the Rehabilitation Act. Additionally, the plaintiffs requested a temporary restraining order ("TRO") and a preliminary injunction, barring HHC from closing CERC pending adjudication of this action.

* The Honorable Leonard D. Wexler of the United States District Court for the Eastern District of New York, sitting by designation.

The District Court first denied the motion for a TRO, and after an evidentiary hearing denied plaintiffs' motions to certify a class and to issue a preliminary injunction, *see Lincoln CERCPAC I,* 920 F.Supp. at 498. Thereafter, the Court granted defendant's motion to dismiss plaintiffs' complaint, for failure to state a claim. *See Lincoln Cercpac II,* 977 F.Supp. at 278–80. The Court reasoned that the Rehabilitation Act and the ADA afford disabled persons only a right to care equal to that made available to non-disabled persons. Because the complaint alleged that CERC provided specialized care only for disabled persons, the plaintiffs had failed to allege a breach of equal access. Nor does the complaint allege facts from which it could be inferred that the plaintiffs have been "denied equal access to a general health care service." *Id.* at 280.

### Discussion

### 1. Right to Equal Access

 Both the Rehabilitation Act and the ADA protect disabled persons from discrimination in the provision of public services. Section 504 of the Rehabilitation Act provides that

> [n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a). In nearly identical language, the ADA declares that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Apart from the Rehabilitation Act's limitation to denials of benefits "solely" by reason of disability and its reach of only federally funded—as opposed to "public"—entities, these provisions purport to impose precisely the same requirements. Because neither difference affects the dispo-

sition of the instant appeal, we need not consider the statutes separately.

In *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) ("*Choate* "), the Supreme Court applied section 504 of the Rehabilitation Act to a factual situation somewhat similar to that presented here. In that case, Tennessee had reduced from 20 to 14 the number of inpatient hospital days per year that it would reimburse hospitals on behalf of a Medicaid recipient. Statistical evidence showed that disabled persons were more likely than non-disabled persons to require more that 14 days of hospitalization per year, and accordingly challenged the reduction as violative of section 504. The Supreme Court first assumed that a disparate impact would be sufficient to state a claim under section 504. *See id.* at 299, 105 S.Ct. 712. It held, however, that section 504 requires that "an otherwise qualified handicapped individual must be provided with meaningful access *to the benefit that the grantee offers.*" *Id.* at 301, 105 S.Ct. 712 (emphasis added). The Court noted that the benefit itself "cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.*

Applying these standards, the Court determined that the relevant benefit was the 14–day period of covered hospitalization. The Court upheld the benefit limitation, reasoning that it "does not exclude the handicapped from or deny them the benefits of the 14 days of care the State has chosen to provide." *Id.* at 302, 105 S.Ct. 712. "The reduction in inpatient coverage will leave both handicapped and non-handicapped Medicaid users with identical and effective hospital services fully available for their use, with both classes of users subject to the same durational limitation." *Id.*

In the instant case, the District Court cited *Choate* for the proposition that "the disabled do not have a right to more public services than the non-disabled, even if the disabled need them." *Lincoln II,* 977 F.Supp. at 280. And since the Court concluded that the plaintiffs asserted only the denial of specialized

services for the disabled—rather than services made available by the HHC to non-disabled persons—the Court ruled the complaint deficient.

On appeal, the plaintiffs argue that the District Court overread *Choate* by suggesting that under its rationale no protection would ever be provided for any "specialized" services. The plaintiffs note that in *Choate* the Supreme Court explicitly recognized that a benefit may not be defined in such a way as to exclude the disabled, and that "reasonable accommodations" might be required in some cases. *See Choate*, 469 U.S. at 301 & n. 21, 105 S.Ct. 712. We need not decide whether, in some circumstances, a reasonable accommodation in the provision of medical care to a disabled person equal to that provided to a non-disabled person might have to include medical services that could be characterized as "specialized." The complaint in this case has no allegation that any of the children involved are being denied any care available to children without disabilities, nor that in being provided with such care, they have been denied some specialized service that needs to be provided as a reasonable accommodation of the child's disability.

All the complaint alleges with respect to the four children whose conditions are detailed is that each child's "health and safety depends upon a continuous course of specialized diagnostic, treatment and rehabilitative services from CERC." Complaint ¶¶ 13, 15, 17, 19. The closing of CERC is challenged, not because its absence will deprive disabled children of medical service available to non-disabled children, but because the closing will eliminate or reduce some services needed by disabled children and will inconveniently relocate at Morrisania other services that these children require. The complaint compares the service expected at Morrisania only to the specialized care previously provided to disabled children by CERC. Once CERC is closed, the plaintiffs allege, they will no longer have access to a "facility within the South Bronx and Northern Manhattan regions that is comparable to CERC in the size of its patient population, quality of service or comprehensiveness in the delivery of health care services." Complaint ¶ 48. But the disabili-

ties statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided.

At oral argument in this Court, the plaintiffs contended that a disabled child brought to Lincoln with a broken leg might well need not only the same treatment for the fracture that a non-disabled child would receive but also additional service, such as referral to some facility equipped to handle the child's disability. At this point, however, we need not speculate whether a child with disabilities, brought to Lincoln for medical service available to a child without disabilities, will be denied the basic service needed, or will be denied some additional specialized service that might be required as a reasonable accommodation of the child's disability. In the absence of allegations that such denials are now occurring, this complaint was properly dismissed.

## 2. Integration

■ The plaintiffs also contend that HHC has violated regulations promulgated pursuant to the ADA by failing to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d) (1997). In particular, the plaintiffs contend that "being forced to go to hospitals other than Lincoln Hospital, which is the hospital in their neighborhood they originally chose for their treatment, is unnecessarily and unlawfully segregating." Brief for Appellants at 42. We do not discuss this alleged violation of the integration mandate because it is asserted for the first time on appeal.

### Conclusion

The judgment of the District Court is affirmed.