Juana RODRIGUEZ, by her son and next friend, Wilfredo Rodriguez; Amelia Russo; Mary Weinblad, by her daughter and next friend, Susan Downes; Christos Gouvatsos; and Sidonie Bennett, individually and on the behalf of all others similarly situated, Plaintiffs–Appellees,

Mollie Peckman, by her son and next friend, Alex Peckman, Intervenor–Plaintiff–Appellee,

v.

CITY OF NEW YORK; Irene Lapidez, Commissioner, Nassau County Department of Social Services; Commissioner of the Westchester County Department of Social Services; Commissioner, Suffolk County Department of Social Services; and The New York City Department of Social Services, Intervenors–Defendants–Appellants,

Dennis Whalen, Commissioner of the New York State Department of Health; and Brian Wing, Commissioner of the New York State Office of Temporary Disability Assistance, Defendants–Appellants.

Docket Nos. 99–7572, 99–7604, 99–7586, 99–7618, 99–7588.

United States Court of Appeals, Second Circuit.

Argued: July 12, 1999

Decided: Oct. 06, 1999

Leslie Salzman, Cardozo Bet Tzedek Legal Services, New York, New York (Toby Golick, Cardozo Bet Tzedek Legal Services, New York New York; Donna Dougherty, Queens Legal Services for the Elderly, Rego Park, New York; Michael Scherz, New York Legal Assistance Group, New York, New York, of counsel), for Plaintiffs–Appellees and Intervenor–Plaintiff–Appellee.

James M. Hershler, Assistant Attorney General of the State of New York (Eliot Spitzer, Attorney General; Michael Belohlavek, Assistant Attorney General, of counsel), New York, New York, for Defendants–Appellants.

Mordecai Newman, Assistant Corporation Counsel of the City of New York (Michael D. Hess, Corporation Counsel; Larry A. Sonnenshein, Assistant Corporation Counsel, of counsel), New York, New York, for Intervenors–Defendants–Appellants City of New York and The New York City Department of Social Services.

Michael T. Hopkins, Hopkins, Kopilow & Weil, Garden City, New York, for Intervenor–Defendant–Appellant Commissioner, Nassau County Department of Social Services.

Linda Trentacoste, Senior Assistant County Attorney (Alan D. Scheinkman, Westchester County Attorney; Stacey Dolgin–Kmetz, Chief Deputy County Attorney, of counsel), White Plains, New York, for Intervenor–Defendant–Appellant Westchester County Department of Social Services.

Derrick J. Robinson, Assistant County Attorney, Hauppauge, New York (Robert J. Cimino, Suffolk County Attorney, of counsel), for Intervenor–Defendant–Appellant Commissioner Suffolk County Department of Social Services.

Valerie J. Bogart, Center for Disability Advocacy Rights, Inc., New York, New York, for Amici Curiae AARP; The Alzheimer's Disease and Related Disorders Association, National Office & New York City Chapter; National Association of Protection and Advocacy Systems; National Senior Citizens Law Center; Medical Society of the State of New York; New York StateWide Senior Action Council; Gay Men's Health Crisis; Samuel Sadin Institute on Law of the Brookdale Center on Aging of Hunter College; Disabled in Action of Metropolitan New York, Ltd.; Friends and Relatives of the Institutionalized Aged; and Nursing Home Community Coalition of New York.

Before: WINTER, Chief Judge, WALKER, and CABRANES, Circuit Judges.

WINTER, Chief Judge:

This appeal arises from a class action challenging the failure of the City of New York and other appellants (collectively "New York") to provide certain personal-care services to Medicaid recipients. Judge Scheindlin held that New York's failure to include safety-monitoring services along with other personal care services violated: (i) the Medicaid Act, 42 U.S.C. § 1396 *et seq.;* (ii) certain regulations promulgated under the Act, 42 C.F.R. §§ 440.230(b), (c); 420.240(b); (iii) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and (iv) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* The district court entered a permanent injunction requiring that New York provide safety monitoring. We reverse.

## BACKGROUND

The federal Medicaid program provides medical assistance to certain financially needy individuals. Medicaid is funded and run jointly by the federal and state governments. State participation in the program is optional. However, if a state chooses to participate, it must formulate a plan that includes certain mandatory forms of medical assistance. *See* 42 U.S.C. § 1396a(a)(10)(A). The Medicaid Act defines " '[m]edical assistance' " as "payment of part on all of the cost of the [enumerated] care and services." *Id.* § 1396d(a). States are also given the option of providing additional types of coverage. *See id.* §§ 1396a(a)(10)(A), 1396d(a) (listing 27 different categories of medical assistance, 7 of which are mandated by § 1396a(a)(10)(A)). Once the federal government approves a state Medicaid plan, it then subsidizes a significant portion of the cost of the coverage—including optional services that the state has agreed to provide. *See* 42 U.S.C. § 1396; *Alexander v. Choate,* 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

New York has enacted a Medicaid program, *see* N.Y. Soc. Serv. Law § 363, that is administered by local social services districts within the parameters of federal and state regulation. *See id.* § 62(1). As part of its program, New York has opted to include personal-care services, which are not federally required. *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(24); N.Y. Soc. Serv. Law § 365–a(2)(e).[1] New York defines these services as "some or total assistance with personal hygiene, dressing and feeding; nutritional and environmental support functions; and health-related tasks." 18 N.Y.C.R.R. § 505.14(a). A patient is entitled to receive personal-care services if they are medically necessary and "essential to the maintenance of the patient's health and safety in his or her own home." *Id.* Further, to be eligible, a patient must also have a stable medical condition and be self-directing, *i.e.,* able to direct the personal-care service attendant and take responsibility for his/her "activities of daily living" ("ADLs"). *Id.* § 505.14(a)(4)(i) & (ii). Even if a patient is non-self-directing, he/she is still eligible for home care services if another individual or agency can provide the direction. *See id.* § 505.14(a)(4)(ii)(a)-(c).

New York has enumerated three types of personal-care services with a detailed list of the discrete tasks to be provided under each type. *See id.* § 505.14(a)(6). These services include tasks associated with numerous ADLs, including bathing, toileting, taking medication, assisting with

---

1. N.Y. Soc. Serv. Law § 365–a(2)(e) states that medical assistance includes:

 personal care services, including personal emergency response services, shared aide and an individual aide, furnished to an individual who is not [institutionalized], as de-termined to meet the recipient's needs for assistance when cost effective and appropriate ... and when prescribed by a physician, in accordance with the recipient's plan of treatment ... and furnished in the recipient's home or other location[.]

personal hygiene, dressing, feeding, light housekeeping, and shopping. *See, e.g., id.* § 505.14(a)(6)(i)(a), (ii)(a).

To determine which services it will provide, New York uses so-called task based assessment ("TBA") programs. While the programs vary, they basically involve a medical request for home care from the patient's physician, which is followed by an assessment by a social worker or a nurse. *See Rodriguez v. Debuono,* 177 F.R.D. 143, 148 (S.D.N.Y.1997), *vacated,* 162 F.3d 56 (2d Cir.1998) (per curiam), *amended by* 175 F.3d 227 (2d Cir.1999) (per curiam). Using a TBA form—listing various tasks, the amount of assistance required, and possibly the times at which the tasks are to be performed—the assessor determines the patient's needs. *See id.* The relevant agency then uses this form to decide which services it will provide. *See id.*

This class action challenges New York's failure to include safety monitoring as an independent task in the TBA or as a provided service. Appellees are members of a class that are eligible to receive Medicaid and who suffer from mental disabilities—such as Alzheimer's disease—that cause them to require assistance with daily living tasks. They have received personal-care services but allege that, without the provision of safety monitoring as an independent service, the services provided are inadequate to meet their medical needs and to allow them to continue living in their homes. *See Rodriguez,* 177 F.R.D. at 148–51 (discussing appellees). If safety monitoring were provided, a caregiver would be present in the patient's home to ensure that the person did not injure himself/herself in some manner, *e.g.,* repeatedly taking medication because the patient had forgotten having taken it or failing to turn off the stove. Appellees argue that safety monitoring is comparable to the other personal-care services that New York does provide and that they cannot remain in their homes without it. They claim this omission constitutes unlawful discrimina-

tion against otherwise eligible, mentally disabled patients.

Initially, the district court granted partial class certification and entered a preliminary injunction ordering New York to include safety monitoring as a separate task on their TBA forms. *See Rodriguez,* 177 F.R.D. at 166–67. It found that appellees had demonstrated a substantial likelihood of success that the New York program violated the Medicaid Act, *see id.* at 156–61, and that they would suffer irreparable harm unless safety monitoring was provided, *see id.* at 165–66. We vacated that injunction, holding that because the district court had entered a stay pending appeal, it implicitly found that the harm that appellees would suffer was not so imminent as to be irreparable. Hence, preliminary injunctive relief was improper. *See Rodriguez,* 175 F.3d at 233–36.

On remand, the district court held that the TBA program violated the Medicaid Act, its regulations, the Rehabilitation Act, and the ADA. *See Rodriguez v. DeBuono,* 44 F.Supp.2d 601 (S.D.N.Y.1999). The court entered a permanent injunction, again requiring the appellants to include safety monitoring as an independent task on the TBA forms. *See id.* at 624. We entered a stay pending disposition of this appeal and now reverse.

## DISCUSSION

■ We may overturn an order granting a permanent injunction "if the district court relied upon a clearly erroneous finding of fact or incorrectly applied the law." *General Media Communications, Inc. v. Cohen,* 131 F.3d 273, 278 (2d Cir.1997) (internal quotation marks omitted), *cert. denied,* — U.S. —, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998). We consider in turn whether appellants' failure to provide safety monitoring as an independent task violates (i) the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(B); (ii) certain regulations issued pursuant to the Act, 42 C.F.R. §§ 440.230(b), (c), 440.240(b); (iii) Section 504 of the Rehabilitation Act, 29 U.S.C.

§ 794; and (iv) the ADA, 42 U.S.C. § 12132.

### a) *Medicaid Act*

Appellees first contend that the exclusion of safety monitoring from the TBA and the list of provided services violates 42 U.S.C. § 1396a(a)(10)(B). This provision states:

> that the medical assistance made available to any individual described in subparagraph (A)—
>
> (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
>
> (ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A).

Subparagraph (A) lists the individuals to whom medical assistance must be provided, *i.e.*, many types of needy individuals. *See id.* § 1396a(a)(10)(A).[2]

We have previously elaborated upon the purpose and scope of this provision. When Congress passed the Medicaid Act in 1965, it sought to ensure that "the primary concern of the states in providing financial assistance should be those persons who lack sufficient income to meet their basic needs—termed the categorically needy." *Camacho v. Perales,* 786 F.2d 32, 38 (2d Cir.1986). This group—*i.e.,* those listed in subparagraph (A)—were contrasted with the medically needy, those who have resources to meet most of their basic needs but not their medical ones. *See id.* Section 1396a(a)(10)(B) guarantees that if a state elects to provide Medic-

aid to the medically needy, it must also provide it to the categorically needy and that it may not provide more assistance to the former group than to the latter. *See id.* at 39. Moreover, states may not provide benefits to some categorically needy individuals but not to others. *See* 42 U.S.C. § 1396a(a)(10)(B)(i); *see also Schweiker v. Hogan,* 457 U.S. 569, 573 n. 6, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982) (stating that Section 1396a(a)(10)(B) ensures "that the medical assistance afforded to an individual who qualified under any categorical assistance program could not be different from that afforded to an individual who qualified under any other program"); *see also Sobky v. Smoley,* 855 F.Supp. 1123, 1140 (E.D.Cal.1994) (holding that current text of § 1396a(a)(10)(B) requires comparability between groups of the categorically needy as well as between individuals within the same group). Section 1396a(a)(10)(B) thus precludes states from discriminating against or among the categorically needy.

■ Appellees' discrimination claim is entirely different from the types of discrimination described above. They do not contend that the medically needy receive coverage in New York not afforded to the categorically needy or that some distinction is drawn among the categorically needy. Instead, they claim that, because safety monitoring is "comparable" to the personal care services already provided by New York, the failure to provide such monitoring violates Section 1396a(a)(10)(B). *See also Rodriguez,* 177 F.R.D. at 158–61. Appellees attempt to graft a new requirement on this Section: If two different benefits are "comparable"

---

**2.** Rodriguez also relies on 42 C.F.R. § 440.240. This provision states that:

> Except as limited in § 440.250—
>
> (a) The plan must provide that the services available to any categorically needy recipient under the plan are not less in amount, duration, and scope than those services available to a medically needy recipient; and
>
> (b) The plan must provide that the services available to any individual in the fol-

lowing groups are equal in amount, duration, and scope for all recipients within the group:

> (1) The categorically needy.
> (2) A covered medically needy group.

This regulation does not differ from Section 1396a(a)(10)(B) in any respect relevant to this appeal, and our analysis is thus identical under the two provisions.

and one is provided, the other must be as well. Thus, they conclude, once a state provides assistance for any personal-service activity comparable to safety monitoring, it must also provide safety monitoring.[3]

However, Section 1396a(a)(10)(B) does not require a state to fund a benefit that it currently provides to no one. Its only proper application is in situations where the same benefit is funded for some recipients but not others. *See, e.g., Blanchard v. Forrest,* 71 F.3d 1163, 1167–68 (5th Cir. 1996) (finding that Louisiana's limits on retroactive coverage, *i.e.,* providing coverage for some but not others, violated § 1396a(a)(10)(B) & (34)); *cf. White v. Beal,* 555 F.2d 1146, 1149–51 (3d Cir.1977) (finding that Pennsylvania's provision of coverage for eyeglasses based on cause of disability and not medical necessity violated Medicaid Act). A holding to the contrary would both substantially narrow the "broad discretion" the Medicaid Act confers "on the States to adopt standards for determining the extent of medical assistance," and create a disincentive for states to provide services optional under federal law lest a court deem other services "comparable" to those provided—an elastic concept—thereby increasing the costs of the optional services. *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). The Act therefore "requir[es] only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Id.* (quoting 42 U.S.C. § 1396a(a)(17)); *see also id.* at 446 n. 11, 97 S.Ct. 2366. Appellants' decision to distinguish between safety monitoring and other tasks thus does not implicate Section 1396a(a)(10)(B).

We reject appellees' further contention that because incidental safety monitoring is provided to those receiving other personal care services, it must be provided to appellees as well. Caregivers of course monitor safety while providing other personal-care services to patients. *See Rod-*

*riguez,* 44 F.Supp.2d at 619. If a caregiver failed to monitor a patient's safety while he/she was providing another service, he/she would obviously not be providing reasonable care. A clear and legitimate distinction exists, therefore, between providing safety monitoring as an incidental benefit when the care-giver is assisting with another task and providing it as an independent task, when the caregiver is present only to monitor the patient's safety.

■ Because New York's program does not impermissibly discriminate under Section 1396a(a)(10)(B), New York may prevail simply by showing that the decision not to include safety monitoring as an optional benefit was reasonable. *See* 42 U.S.C. § 1396a(a)(17); *Beal,* 432 U.S. at 446 n. 11, 97 S.Ct. 2366 (finding Pennsylvania's lack of funding for nontherapeutic abortions to be "entirely consistent" with Section 1396a(a)(10)(B) and noting that the state had "reasonable justification" for making this decision); *Himes v. Shalala,* 999 F.2d 684, 686 (2d Cir.1993). Although appellees did not raise a specific challenge pursuant to Section 1396a(a)(17), the district court seemed to find that New York's failure to provide safety monitoring was unreasonable. *See Rodriguez,* 177 F.R.D. at 159–60. We note, however, that because the cost of personal-care services would be significantly greater if safety monitoring were provided, *see id.* at 149–51 (discussing level of services appellees believed they needed), New York had legitimate fiscal reasons for its decision. Moreover, the federal Health Care Financing Agency—which is responsible for administering the Medicaid program—informed New York that its decision was not only reasonable but proper. *See id.* at 160 (" '[W]e believe that the supervising / monitoring of an individual, by itself, without the provision of recognized personal care services, would not be considered personal

---

3. Of course, a state could avoid such a requirement by simply ceasing to provide personal service coverage altogether as it is optional under the Medicaid Act.

care services for Medicaid purposes.'" (quoting letter)).

b) *42 C.F.R. § 440.230(b), (c)*

 Appellees next contend that appellants' plan violated two regulations promulgated pursuant to the Medicaid Act, 42 C.F.R. § 440.230(b) & (c). Title 42 C.F.R. § 440.230 reads in relevant part as follows:

(b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.

Appellants contend that these regulations are not enforceable by private actions under Section 1983 but, even if they are, the regulations have not been violated. Assuming *arguendo* that a claim based upon these regulations is cognizable under Section 1983, *cf. Concourse Rehabilitation & Nursing Ctr. Inc. v. Wing,* 150 F.3d 185, 188 (2d Cir.1998) (assuming without deciding that Section 1396a(a)(1) creates federal rights enforceable by private parties under Section 1983), we see no conflict with these regulations.

Title 42 C.F.R. § 440.230(b) looks to the purpose of the particular service provided. Appellees argue that the purpose of the personal care services is to enable recipients to reside in their homes, *see Rodriguez,* 44 F.Supp.2d at 614, and, their argument goes, because safety monitoring enables appellees to remain at home, it must be provided. This analysis is, however, at the incorrect level of generality.

Instead of examining the particular need addressed by a particular service, it focuses on the presumed purpose of an entire package of personal care services. This approach is contrary to the text of the regulation and to the purpose of the Medicaid Act.

The regulation looks to the purpose of "[e]ach service" provided, *see* 42 C.F.R. § 440.230(b), and where a state like New York provides numerous different services, each is to be examined independently.[4] Moreover, interpreting the regulation to require examination of the overall purpose of a broad category of optional services provided instead of the purpose of a particular benefit would undermine the discretion that the Medicaid Act affords states. *See Beal,* 432 U.S. at 444, 97 S.Ct. 2366. Under appellees' reading of the regulation, for example, a state that provided one benefit that allowed some patients to remain at home would be required to provide virtually all benefits needed to enable all Medicaid recipients to remain at home. Thus, even if safety monitoring is essential to enable appellees to reside safely in their homes, 42 C.F.R. § 440.230(b) is not violated by New York's failure to provide it.

Appellees' claim under subsection (c) also suffers from a fatal problem. The regulation states that "[t]he Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a *required* service under §§ 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c) (emphasis added). Personal care services are not a required service under Section 440.210 or Section 440.220.[5]

---

4. We note that courts construing this regulation have viewed as the relevant question the propriety of the manner in which a particular benefit was provided, not whether a new benefit was mandated. For example, in *Charleston Memorial Hospital v. Conrad,* 693 F.2d 324, 330 (4th Cir.1982), the Fourth Circuit found no violation of the Medicaid Act or 42 C.F.R. § 440.230(b) when South Carolina reduced the number of annual hospital visits it

would reimburse. *See also Curtis v. Taylor,* 625 F.2d 645, 650–53 (5th Cir.) (finding limitation on physician visits to three per month did not violate regulation), *modified by* 648 F.2d 946 (5th Cir.1980).

5. Section 440.210 does require states to provide the home health services described in Section 440.70, but those required services do

Thus, this provision gives no support to appellees' claim.

### c) *ADA and Rehabilitation Act Claims*

Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem. *See Lincoln Cercpac v. Health & Hosps. Corp.,* 147 F.3d 165, 167 (2d Cir. 1998).

> Under the ADA,
>
> no qualified individual with a disability shall, by reason of such disability, be … denied the benefits of the services[ ][or] programs … of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a) (comparable requirement under the Rehabilitation Act). A "qualified individual with a disability" is defined as "an individual with a disability who … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). There is no dispute that the appellees are disabled under the statute.

Appellees contend that they satisfy the eligibility requirements for personal care services but are effectively denied the services because of their disability. We disagree.

We begin by noting that New York provides identical services to mentally and physically disabled Medicaid recipients. Although the district court did state that "it is not clear that [certain] services are consistently provided to the mentally disabled, while *comparable* services are provided to the physically impaired," *Rodriguez,* 177 F.R.D. at 159 (emphasis added), this observation turns on the district court's incorrect view of the role of comparability. *See supra.* The district court did not, for example, find that the enumerated services New York provides as part of its personal-care services package not include the type of personal care services

were denied to the mentally disabled. Instead, appellees' claim is that New York's decision not to provide safety monitoring renders the providing of personal-care services ineffective for many who are mentally disabled. At its crux, the claim is that the provision of Medicaid-funded services to one group of disabled persons discriminated against other disabled persons who need different services.

Appellees again fail to focus on the particular services provided by appellants. *See Alexander v. Choate,* 469 U.S. 287, 303, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (holding that Medicaid "benefits" under the Rehabilitation Act [and hence ADA] are "the individual services offered" not the "amorphous objective of 'adequate health care'"). The ADA requires only that a particular service provided to some not be denied to disabled people. *See Doe v. Pfrommer,* 148 F.3d 73, 83 (2d Cir.1998). As discussed above, the services that New York provides to the mentally disabled are no different from those provided to the physically disabled. Neither group is provided with independently tasked safety monitoring. Hence, what appellees are challenging "is not illegal discrimination against the disabled, but the substance of the services provided." *Id.* at 84; *cf. Choate,* 469 U.S. at 304, 105 S.Ct. 712 ("[The Rehabilitation Act] seeks to assure evenhanded treatment…. The Act does not, however, guarantee the handicapped equal results from the provision of state Medicaid…."). Thus, New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one. *See* 42 U.S.C. § 12132. Nor do appellees "meet[ ] the essential eligibility requirements for the receipt" of separately tasked safety monitoring services because New York does not even have any such requirements. *Id.* § 12131(2).

Appellees place much reliance on the Supreme Court's recent decision in *Olm-* at issue here.

*stead v. L.C.,* —— U.S. ——, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). In *Olmstead,* the Court examined whether Georgia's refusal to provide services to mentally disabled persons in "community settings," instead of institutions, violated the ADA. The Court held that such action would violate the ADA only "when the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." 119 S.Ct. at 2181. This decision is inapposite.

In *Olmstead,* the parties disputed only— and the Court addressed only—*where* Georgia should provide treatment, not *whether* it must provide it. *See id.* at 2183–84 (detailing state's provision of treatment to mentally disabled patients in institutions). Georgia already had numerous state programs that provided community-based treatment that the *Olmstead* respondents were qualified to receive. *See id.* at 2183–84, 2188. The state contended that even though these services existed, it had a cost justification to keep certain mentally disabled individuals institutionalized.

The portion of the opinion most relevant to the instant dispute was the Court's statement that it was explicitly not holding that "the ADA imposes on the States a standard of care for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities." *Id.* at 2188 n. 14 (internal quotation marks omitted). *Olmstead* does not, therefore, stand for the proposition that states must provide disabled individuals with the opportunity to remain out of institutions.

Instead, it holds only that "States must adhere to the ADA's nondiscrimination requirement with regard to the services *they in fact provide.*" *Id.* (emphasis added).

Appellees want New York to provide a new benefit, while *Olmstead* reaffirms that the ADA does not mandate the provision of new benefits. Under the ADA, it is not our role to determine what Medicaid benefits New York must provide. *See Cercpac,* 147 F.3d at 168 ("[T]he disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided."). Rather, we must determine whether New York discriminates on the basis of a mental disability with regard to the benefits it does provide. Because New York does not "task" safety monitoring as a separate benefit for anyone, it does not violate the ADA by failing to provide this benefit to appellees.[6]

We therefore reverse.

---

**6.** Because New York did not discriminate against appellees in violation of the ADA, we need not reach whether separately tasking safety monitoring is a "reasonable modification[ ]" required under the ADA by 28 C.F.R. § 35.130(b)(7).