Levi TOWNSEND, et al., Plaintiffs,

v.

Lyle QUASIM, Defendant.

No. C00–944Z.

United States District Court,
W.D. Washington,
at Seattle.

June 20, 2001.

Katrin E. Frank, Andrea Brenneke, MacDonald, Hoague & Bayless, Seattle, WA, for Plaintiff.

David R. Goodnight, Margarita V. Latsinova, Dorsey & Whitney, LLP, Seattle, WA, Alan Smith, Atty. Gens. Office, for Defendant.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on defendant's motion for summary judgment, docket no. 48. The Court heard oral argument on May 22, 2001 and took the motion under advisement. Subsequent to oral argument, the plaintiffs moved to amend their complaint to narrow the scope of paragraph 6.2 of the prayer for relief. The Court has by separate order granted that motion to amend. The Court, having reviewed all of the pleadings filed in connection with the underlying motion for summary judgment and having considered the arguments of counsel, now enters this order. The Court hereby GRANTS the defendant's motion for summary judgment, docket no. 48.

## Background

Plaintiffs are a class of Washington residents who are or will be (1) individuals with a "disability" within the meaning of the Americans with Disabilities Act ("ADA"), see 42 U.S.C. § 12101(2)(A); (2) eligible under the State Medicaid Plan for nursing facility care; and (3) eligible for COPES Medicaid waiver services but for having income that exceeds the categorically needy income limit (300 percent of the Supplemental Security Income ("SSI") federal benefit rate). See Stipulation and Order Regarding Definition of Class, docket no. 45. The plaintiffs have filed suit alleging that Washington state's current provisions for the medically needy violates the ADA. See 42 U.S.C. § 12101 et seq .

The Department of Social and Health Services ("DSHS") administers the state's Medicaid program pursuant to Title XIX of the Social Security Act. See 42 U.S.C. § 1396 et seq. States participating in the Medicaid program must comply with the Medicaid Act and its attendant regulations. See 42 U.S.C. § 1396a; Atkins v. Rivera, 477 U.S. 154, 156–57, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986). In other words, unless a state receives a "waiver" from the Federal Health Care Financing Administration ("HCFA"), the state must provide assistance in the manner prescribed by the Medicaid Act and accompanying regulations. See Beckwith v. Kizer, 912 F.2d 1139, 1140 (9th Cir.1990) ("The provisions of [42 U.S.C. § 1396n(c) ] allow the Secretary to 'waive' certain uniform requirements of the Act . . . in order to

permit the states to target particular groups.")

The State Medicaid Plan must cover certain minimum services (including skilled nursing home care) for "categorically needy" persons who are, in relevant part, aged, blind, or disabled, and receive Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 1396a(a)(10)(A)(1); 42 C.F.R. §§ 435.120. The State Medicaid Plan may expand categorically needy coverage to include additional services and additional categorically needy groups, including certain "SSI relatable" persons whose income does not exceed 300 percent of the SSI benefit amount. *See* 42 U.S.C. §§ 1396a(a)(10)(A)(ii), 1396d(a); 42 C.F.R. § 435.201. The State Medicaid Plan may also cover "medically needy" persons whose income exceeds the categorically needy income eligibility limit. *See* 42 U.S.C. § 1396a(10)(C); 42 C.F.R. §§ 435.4, 435.300 *et seq.*

■ In passing the Medicaid Act, Congress "sought to ensure that the primary concern of the states in providing financial assistance should be those persons who lack sufficient income to meet their basic needs—termed the categorically needy." *Rodriguez v. City of New York,* 197 F.3d 611, 615 (2d Cir.1999). In contrast, the "medically needy" group includes those who "have the resources to meet most of their basic needs but not their medical ones." *Id.* The Medicaid Act thus requires the State Medicaid Plan to provide certain categorically needy services, but does not require medically needy programs—with one exception. The State Plan must offer medically needy nursing home care if, like Washington, the state provides categorically needy services for "SSI-relatable" persons whose income is under 300 percent of the SSI benefit amount. *See* 42 U.S.C. § 1396p(d)(4)(B); Moss Decl., docket no. 21, at ¶ 8. Thus, Washington state provides Medicaid funded long-term care services to the medically needy in nursing facilities.

In addition to the mandatory Medicaid services offered under the State Medicaid Plan, participating states may at their option offer "waivered" home and community programs to enable eligible persons to live in their own homes or in community-based residences such as adult family homes or assisted living facilities. *See* 42 U.S.C. § 1396n(c); 42 C.F.R. § 441.300. Waivered programs are exempt from certain Medicaid requirements and are not part of the State Medicaid Plan. *See* 42 U.S.C. § 1396n(c)(3); 42 C.F.R. § 440.180(a). Waivered programs may be offered to the categorically needy, the medically needy, or both. *See* 42 C.F.R. §§ 435–217, 435.301. In an effort to provide some relief to the categorically needy—the target of the Medicaid Act—Washington has obtained a waiver from the HCFA to offer the home and community-based program for the categorically needy known as the Community Options Program Entry System ("COPES"). *See* RCW 74.39A.030; WAC 388–15–610 (1999) (now codified at 388–71 (2000)). The state has not obtained a waiver to create a similar program for the medically needy. Therefore, recipients of COPES benefits must be categorically needy.

As long as the state provides long-term care to the medically needy, plaintiffs contend that the medically needy are also entitled to those long-term care services in the most integrated setting appropriate to their needs in accord with 28 C.F.R. § 35.130(d). Plaintiffs contend that the state's failure to provide them benefits similar to the categorically needy under the COPES program violates the ADA.

**Discussion**

**A. Summary Judgment Standard**

Summary judgment is appropriate when the movant demonstrates that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130 (9th Cir.2000). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Exclusion from COPES

The plaintiffs assert that the state's exclusion of the medically needy from the COPES program violates the ADA.[1] However, this argument fails because any such exclusion is based on an individual's financial income rather than their disability.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. One of the ADA regulations, deemed the "integration mandate," requires a public entity to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with a disability." 28 C.F.R. § 35.130(d). In upholding this integration mandate, the Supreme Court has held that "unjustified isolation ... is properly regarded as discrimination based on disability." *Olmstead v. Zimring*, 527 U.S. 581, 597, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999).

However, the exclusion of the medically needy from the COPES program does not violate the integration mandate. In order to qualify for the COPES program, an individual must receive income of less than 300 percent of SSI. By definition, medically needy individuals receive income in excess of this threshold. Therefore, the medically needy are excluded from the COPES program based on their financial income and not based upon their disability. *Cf.* 42 U.S.C. § 12132 ("no qualified individual with a disability shall, *by reason of such disability,* be excluded") (emphasis added). A state may exclude disabled individuals from a program based upon factors unrelated to their disability. *See Weinreich v. Los Angeles County Metro. Transportation Auth.*, 114 F.3d 976 (9th Cir.1997).

Moreover, this construction of the ADA is bolstered by Title II's definition of a qualified individual with a disability. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... *meets the essential eligibility requirements* for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (emphasis added). The plaintiff class does not "meet the essential eligibility requirements" of the COPES program because, by class def-

---

1. The plaintiffs' initial complaint only challenged the COPES program based on the premise of this exclusion. Plaintiffs have now filed an amended complaint raising additional issues.

inition, they exceed the income limitations of the COPES program.

■ Furthermore, modifying the income limitation of the COPES program would be a fundamental alteration to the character of the COPES program. The ADA does not require fundamental alterations of an essential eligibility requirement. *See PGA Tour, Inc. v. Martin,* 531 U.S. 1049, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). By creating a waiver program for the categorically needy, Washington state has sought to provide additional services for the most needy individuals. *See Schweiker v. Hogan,* 457 U.S. 569, 590, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982) (recognizing that by distinguishing between the categorically needy and the medically needy, Congress sought to provide relief for the "most needy" and found the medically needy to be "less needy") (citing 1965 House Report, at 66). The relief sought by the plaintiff would have the effect of merging the two distinct classes of categorically needy and medically needy individuals. A modification of the COPES program to include the medically needy would fundamentally alter the essential eligibility requirements of the program. *See Aughe v. Shalala,* 885 F.Supp. 1428 (W.D.Wash.1995) (holding that a program eligibility requirement based on age does not violate the ADA).

Moreover, even if the plaintiffs' proposed modifications did not fundamentally alter the essential eligibility requirements of the COPES program, the state would not be required to effectuate the modifications because the exclusion of the plaintiff class is not based upon their disability.[2]

*See Castellano v. City of New York,* 946 F.Supp. 249, 254 (S.D.N.Y.1996) (concluding that "even reasonable modifications need be made only if they 'are necessary to avoid discrimination on the basis of disability' ") (citing 28 C.F.R. § 35.130(b)(7)). Therefore, the exclusion of the plaintiffs from the COPES program does not violate the ADA.

## C. Integration Mandate

In the alternative, the plaintiffs argue that the integration mandate of the ADA requires placement in a more integrated setting.[3] As set forth above, the integration mandate requires a state to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with a disability." 28 C.F.R. § 35.130(d). Thus, the issue becomes whether the ADA requires the state to develop and fund a program that would allow individuals in the plaintiff class to be placed in a more integrated setting.

Although *Olmstead* provides much guidance and insight into the scope of the integration mandate, it did not address the immediate issue. In *Olmstead,* the plaintiffs' treatment professionals concluded that the plaintiffs should be placed in a community-based program. *See Olmstead v. Zimring,* 527 U.S. 581, 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). The program for which the plaintiffs sought access already existed. *See id.* at 593, 119 S.Ct. 2176. However, the women remained institutionalized. The *Olmstead* court proceeded to consider whether the ADA re-

**2.** This reasoning suggests that where the exclusion from a program is not based upon a party's disability, a court should not even address the issue of fundamental alterations.

**3.** The complaint as amended attempts to challenge the state's policy on the integration mandate grounds. As to this argument, the existence of the COPES program is not important because the plaintiffs argue that the integration mandate requires provision of a more integrated setting irrespective of the COPES program. At most, the COPES program demonstrates that a more integrated community setting is feasible.

quired integration. Although holding that the plaintiffs should be placed in a more integrated setting, the issue of whether a state must develop and fund a program was not presented or addressed in the decision. The Supreme Court expressly stated that it did not hold that "the ADA imposes on the States a standard of care for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities." *Id.* at 603 n. 14, 119 S.Ct. 2176 (internal quotations omitted).

In contrast, *Rodriguez v. City of New York,* 197 F.3d 611 (2d Cir.1999), dealt with this issue. In light of *Olmstead,* the Second Circuit considered whether Title II of the ADA required a state to provide additional services. In *Rodriguez,* New York adopted a program where it provided personal-care services to Medicaid participants. *See id.* at 613. The services offered included "activities of daily living" like bathing, toileting, taking medication, assisting personal hygiene, dressing, feeding, light housekeeping, and shopping. *See id.* at 613–14. The plaintiff class was composed of individuals that were eligible to receive Medicaid and who suffered from mental disabilities—such as Alzheimer's disease—that caused them to require assistance with daily living tasks. The plaintiffs received personal-care services through the program, but alleged that without the provision of safety monitoring as an independent service, the personal care services were inadequate to meet their medical needs and to allow them to continue living in their homes. *See id.* at 614. Thus, the plaintiffs argued that Title II of the ADA and *Olmstead* required the state to provide safety monitoring services in order to allow them to stay in their homes—the most integrated setting available. However, New York did not provide the safety monitoring services to anyone.

The *Rodriguez* court rejected plaintiffs' argument. The court held that "[t]he ADA requires only that a particular service provided to some not be denied to disabled people." *Id.* (citing *Doe v. Pfrommer,* 148 F.3d 73, 83 (2d Cir.1998)). Because the plaintiffs did not claim that the state discriminated between individuals in the provision of services, the court concluded that the plaintiffs were not challenging "illegal discrimination against the disabled, but the substance of the services provided." *Id.* (quoting *Doe v. Pfrommer,* 148 F.3d 73, 84 (2d Cir.1998)). A state does not "unlawfully discriminate[ ] against [disabled individuals] by denying a benefit that it provides to no one." *Id.* at 618. "*Olmstead* reaffirms that the ADA does not mandate the provision of new benefits. Under the ADA, it is not [the courts'] role to determine what Medicaid benefits [the state] must provide." *Id.* at 619.

The current dispute is similar to *Rodriguez.* Washington state does not offer a community based program for the medically needy. Rather, the COPES program is only available to the categorically needy pursuant to a Medicaid waiver. Thus, under this waiver, Washington offers a home and community-based program (the COPES program) outside the state Medicaid Plan. Plaintiffs argue that because they provide these services outside the State Medicaid Plan for the categorically needy, they *must* also provide the services to the medically needy.

Plaintiffs make a strong policy argument that the medically needy should also be permitted to live in community-based residences such as adult family homes or assisted living facilities. This alternative eliminates unnecessary isolation, provides services in the most integrated setting ap-

propriate, and would not generate direct costs exceeding the long-term care services now provided to the medically needy in nursing facilities.[4]

■ The plaintiffs now seek to *require* the state to develop and fund these new services for the medically needy to the same extent these services exist for the categorically needy under the COPES program. Neither the ADA nor *Olmstead* mandate such a result. Rather, the ADA simply requires nondiscrimination "with regard to services they in fact provide." *See Rodriguez*, 197 F.3d at 619. Washington state does not provide community-based services for which the medically needy are eligible.[5] Therefore, the ADA does not require the creation of such a program for the medically needy. *Rodriguez* and *Olmstead* only require that "states must adhere to the ADA's nondiscrimination requirement with regard to the services *they in fact provide*." *Olmstead*, 527 U.S. at 603 n. 14, 119 S.Ct. 2176.

Plaintiffs' argument that Washington does in fact provide the COPES services to the categorically needy so it must provide the same service to the medically needy is beyond the requirements of *Olmstead* and the ADA. The ADA mandates that if such a program existed, then the medically needy must be placed in the most appropriate integrated setting. Exclusion for such programs would constitute discrimination. However, because Washington state does not provide community-based programs to the medically needy, the integration mandate does not require their creation. Thus, summary judgment in favor of the defendant is appropriate.

## Conclusion

The Court hereby GRANTS the defendant's motion for summary judgment, docket no. 48. The plaintiffs are excluded from the COPES program based upon their financial income, rather than their disability. Exclusion from a public program only violates the ADA where it is based on a plaintiff's disability. In addition, the integration mandate of the ADA does not *require* a state to develop and fund a new program tailored to the requirements of the medically needy. Despite the strength of the plaintiffs' policy arguments, they must be directed to the DSHS rather than the Courts. Title II and the regulations promulgated pursuant to the statute merely require that a state place disabled individuals in the most integrated program for which the individuals are eligible. In the current case, the state has not chosen to create a community

---

**4.** The Court also notes that the Washington legislature in 2001 authorized DSHS to develop a medically needy waiver program "to the extent of available funds." *See* 2001 Wash. Laws, Ch. 269. However, even this legislation allows the state to provide different services, with a limited enrollment, than services provided to the categorically needy. *Id.* at (1).

**5.** In the plaintiffs' reply brief to the motion to amend the complaint, docket no. 71, the plaintiffs argue that the new legislation provides for the medically needy waiver services they seek. Thus, the plaintiffs suggest that Washington state does in fact provide community-based services for which the medically needy are eligible. However, the plaintiffs misconstrue the nature of the new provisions. The new statutory authority does not create a community-based services program for the medically needy, shape the contours of such a program, nor provide the necessary funding. It merely authorizes the DSHS to develop such a program to the extent funds are available. To date, the state has not developed a program that would satisfy the relief sought be the plaintiffs. Therefore, the question of whether the ADA requires the creation of such a program and controls its scope remains at issue before this Court.

based setting to accommodate the medically needy.

IT IS SO ORDERED.